<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DALE YLITALO, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>AUTOMATIC DATA PROCESSING, INC., ADP, INC., and AMERICAN CENTURY INVESTMENTS SERVICES, INC.<br><br>*Defendants.* | Case No. 2:24-cv-07635-JKS-LDW<br><br>**OPINION**<br><br>June 27, 2025 |

**SEMPER**, District Judge.

This matter comes before the Court upon Plaintiff Dale Ylitalo's ("Ylitalo") motion to appoint lead plaintiff and lead counsel. (ECF 31.) Defendants Automatic Data Processing, Inc. ("Automatic"), ADP, Inc. ("ADP"), and American Century Investment Services, Inc. ("ACI") filed a response. (ECF 32, "Resp.") Ylitalo filed a reply brief. (ECF 33, "Reply.") The Court considered the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Ylitalo's motion for appointment as lead plaintiff and approval of counsel (ECF 31) is **GRANTED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This is a putative federal securities class action brought on behalf of all those who own and operate their own business who purchased or otherwise acquired for themselves a SIMPLE IRA from Defendant ADP from July 9, 2024 to three years prior (the "Class Period"), the funds for which were directed into one of ACI's One Choice Target Date Portfolios at the time of sale of the SIMPLE IRA (the "Class"). (ECF 1, Compl. ¶ 1.) This action is brought on behalf of the Class for

violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 12(a)(2) and 15 of the Securities Act of 1933, in addition to claims arising under Florida and New Jersey law. (*Id.*)

Defendant Automatic and ADP, a subsidiary of Automatic, provide human resources management software and services. (*Id.* ¶¶ 2-3.) ADP also sells retirement plans including SIMPLE IRAs, the funds for which are invested in ACI's "One Choice Target Date Portfolios," which the Complaint describes as "Funds of Funds" comprised exclusively of ACI owned and managed mutual funds (*Id.* ¶¶ 4-5; *see also id.* ¶ 1.) Plaintiff purchased a SIMPLE IRA plan following a July 26, 2023 conversation with an allegedly unlicensed and unregistered sales representative (the "Sales Representative"). (*Id.* ¶¶ 68, 76; *id.* Ex. 1.)

Plaintiff alleges that unlicensed and unregistered ADP employees sold the SIMPLE IRAs, and that Automatic and ACI "knew of and encouraged" the use of unlicensed and unregistered personnel to sell the SIMPLE IRA plans. (*Id.* ¶¶ 5-6.) Plaintiff further alleges that ADP and ACI failed to disclose to consumers that the unlicensed and unregistered personnel were required to sell a certain number of SIMPLE IRAs and received incentives to sell the SIMPLE IRAs. (*Id.* ¶¶ 10, 50-51, 54.) Plaintiff also alleges that the unlicensed and unregistered sales representatives misled Plaintiff and Class Members as to their potential returns on their SIMPLE IRAs. (*Id.* ¶ 86.) Plaintiff has seen a lower return on his SIMPLE IRA than the 6% he was promised at the time of purchase.[1] (*Id.* ¶¶ 69-77.)

On July 9, 2024, Plaintiff Dale Ylitalo filed the Complaint individually and on behalf of all others similarly situated. (ECF 1.) On July 9, 2024, Ylitalo filed a motion to appoint lead plaintiff and approval of counsel. (ECF 31, the "Motion".) Ylitalo's Motion is unchallenged by the other

---

[1] Defendants contest this allegation. (*See* ECF 32; *infra* Section II.A.)

Class members. Defendants jointly filed a response to the Motion, raising a number of issues regarding Plaintiff's adequacy to serve as lead Plaintiff. (ECF 32.) The Court now considers Plaintiff's Motion.[2]

## II. APPOINTMENT OF LEAD PLAINTIFF

The Private Securities Litigation Reform Act ("PSLRA") directs the Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be [the] most capable of adequately representing the interests of class members[.]" 15 U.S.C. §§ 78u-4(a)(3)(B)(i), 77z-1(a)(3)(B)(i). As relevant here,

> I. In general. . . . the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> II. Rebuttal evidence. The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff —
>
> > (aa) will not fairly and adequately protect the interests of the class; or
> >
> > (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §§ 78u-4(a)(3)(B)(iii), 77z-1(a)(3)(B)(iii).

---

[2] Defendants lack standing to formally oppose Plaintiff's motion for appointment as lead plaintiff, but the Court may consider the issues raised by Defendants "for the Court's benefit with the appropriate skepticism that Defendants do not have the best interest of the members of the class at heart." *Blake Partners, Inc. v. Orbcomm, Inc.*, No. 07-4517, 2008 WL 2277117, at *4 (D.N.J. June 2, 2008); *see also Fields v. Biomatrix, Inc.,* 198 F.R.D. 451, 454 (D.N.J. 2000).

The "most adequate plaintiff" must also satisfy the requirements of Federal Rule of Civil Procedure 23 (15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc), 77z-1(a)(3)(B)(iii)(I)(cc)):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### A.     Largest Financial Interest

The Third Circuit has been clear that "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). In doing so, "[c]ourts have discretion to appoint an investor with the largest stake in the litigation." *Roby v. Ocean Power Techs., Inc.*, No. 14-3799, 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015) (citing *In re Cendant Corp. Litig.*, 264 F.3d at 262). "The Third Circuit has concluded that 'largest financial interest' means the largest loss." *Roby*, 2015 WL 1334320, at *5 (citing *In re Cendant Corp. Litig.*, 264 F.3d at 223); *see also In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d. 562, 567 (D.N.J. 2006) (same). In making this determination, "courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant Corp. Litig.*, 264 F.3d at 262. To that

4

end, district courts within the Third Circuit "have accorded the third element, the largest financial loss, the greatest weight." *Roby*, 2015 WL 1334320, at *5 (collecting cases).

Here, Ylitalo invested about $1,716.94 into approximately 137.139 shares of ACI's mutual funds.[3] (ECF 31-2, Declaration of William B. ("Federman Decl."), Ex. B; *see also* ECF 31-1 at 7, "Br.")) Ylitalo appears to claim that this investment is a loss because he "would not have purchased the SIMPLE IRA, the funds for which were immediately invested in ACI's mutual funds, had he known of Defendants' misrepresentations and omissions." (*Id.* at 7.) Although $1,716.94 is a minimal amount, the Court takes into consideration the allegation that the class members consist exclusively of business owners. (*See* Compl. ¶ 99.) In other words, it is not likely that the Class includes institutional investors, the preferred lead Plaintiffs in securities class actions. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) (citing S. Rep. No. 104–98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690) ("The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs."). Although Plaintiff's alleged losses are minimal, due to the characteristics of the Class here, the Court is not as concerned as it may be in other circumstances that only a large financial interest will incentivize Plaintiff to control counsel and the course of litigation. *Cf. Guo v. Tyson Foods, Inc.*, No. 21-00552, 2022 WL 5041798, at *5-6 (E.D.N.Y. Sept. 30, 2022) (denying motion for appointment of lead plaintiffs and approval of lead counsel where plaintiffs had *de minimis* financial losses).

---

[3] Ylitalo's moving brief states that he purchased "approximately 137,139 shares of ACI's mutual funds." (ECF 31-1 at 7.) However, this number appears to be a typographical error, since Ylitalo attests in the certification attached to his Complaint that he purchased 137.139 shares. (*See* ECF No. 1-1 ¶ 5; Federman Decl. Ex. B).

In their response, Defendants note that Ylitalo has not actually alleged *any* losses under federal securities laws. (Resp. at 6; *id.* at 6 n.5 (citing *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991); *In re Royal Dutch Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605, 610 (D.N.J. 2005)). In supplemental filings, Defendants further argue that the rate of return on Ylitalo's SIMPLE IRA account from August 17, 2023 through November 22, 2024 is 9.10%, and from August 17, 2023 through June 5, 2025 is 8.80%, *i.e.*, higher than the rate of return the Sales Representative had estimated for Ylitalo and, as such, not a loss even under Ylitalo's loss theory. (*See* ECF 36, ECF 36-1, ECF 47, ECF 47-1.) Plaintiff contests Defendants' representation and maintains that his rates of return between January 1, 2024 to December 31, 2024 and from January 1, 2025 to March 31, 2025—different time periods than that analyzed by Defendants—were 4.78% and negative 0.44%, respectively. (*See* ECF 44, ECF 44-1, ECF 48, ECF 48-1.) In light of the fact that Defendants do not have standing to challenge Plaintiff's Motion, *see supra* n.2, the Court finds that Defendants' arguments are more appropriate for a motion to dismiss and declines to consider them at this time.

Accordingly, Ylitalo has the "largest financial interest in the relief sought by the class" and will be the presumptive most adequate plaintiff if he "otherwise satisfies" the typicality and adequacy requirements of Rule 23.

### B.   Rule 23 Requirements

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d at 262 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)). This "inquiry . . . should be confined to determining whether the movant

has made a prima facie showing of typicality and adequacy." *In re Cendant Corp. Litig.*, 264 F.3d at 263. This assessment "should be a product of the court's independent judgment," but "need not be extensive." *Id.* at 263-64. "In conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id.* at 264. "When making these determinations, courts should apply traditional Rule 23 principles." *Id.* at 264-65.

> Specifically,
>
>> in inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based."
>>
>> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the cgglass vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."

*Id.* at 265 (alterations in original) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177, 179 (3d Cir. 1988)). "In making the initial adequacy assessment in this context, courts should also . . . inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *In re Cendant Corp. Litig.*, 264 F.3d at 265.

First, the typicality requirement is satisfied when the named plaintiff has "(1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Blake Partners, Inc. v.*

7

*Orbcomm, Inc.*, No. 07-4590, 2008 WL 2277117, at *6 (D.N.J. June 2, 2008) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 809 & n.36 (3d Cir. 1984)). Here, Ylitalo's claims are based on the same legal theory and arise from the same events and course of conduct as the claims of the Class. As Ylitalo explains in his papers, "like all members of the class, Ylitalo alleges that Defendants violated federal securities laws by disseminating materially misleading statements, including misrepresentations and omissions regarding ADP's [Small Business Services] sales representatives licenses, registrations, compensation, and sale incentives and the SIMPLE IRAs' return rates." (Br. at 7-8; *see also* Compl. ¶ 104.) Ylitalo also alleges that his losses, like the losses suffered by other members of the Class, arose from Defendants' alleged misrepresentations and omissions. (Br. at 8.) In the Complaint, Ylitalo further alleges that Defendants' policies apply to and affect Class members uniformly. (Compl. ¶ 105.) At this stage of appointing lead plaintiff pursuant to the PSLRA, the Court finds that Ylitalo satisfies Rule 23's typicality requirement.

Second, the adequacy requirement is satisfied if "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." *Lifestyle Investments, LLC v. Amicus Therapeutics*, No. 15-7448, 2016 WL 3032684, at *7 (internal quotations omitted) (quoting *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002)); *see also In re Cendant Corp. Litig.*, 264 F.3d at 265 ("In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" (quoting *Hassine*, 846 F.2d at 179)). Here, Ylitalo like the other members of the proposed class, seeks to recover the losses he allegedly incurred as a result of Defendants' alleged misrepresentations and omissions. (*See*

Compl. ¶ 106.) Additionally, Ylitalo has represented that he is interested in vigorously pursuing this action and has retained counsel experienced in complex class action litigation. (*Id.*; *see also* Br. at 9.) Furthermore, there does not appear to be a conflict between Ylitalo's claims and those of the purported class. (*See id.*) At this stage of appointing lead plaintiff pursuant to the PSLRA, the Court finds Ylitalo satisfies Rule 23's adequacy requirement.

      **C.**      **Timeliness of Motion**

In determining whether a potential lead plaintiff has "either filed the complaint or made a motion in response to a notice," 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(aa), 77z-1(a)(3)(B)(iii)(I)(aa), the PSLRA explains that

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §§ 78u-4(a)(3)(A)(i), 77z-1(a)(3)(A)(i). Accordingly, a movant must have either (1) "filed the complaint" or (2) made a motion in response to the notice associated with the first-filed complaint "not later than 60 days after the date on which the notice is published." *See id.* §§ 78u-4(a)(3)(B)(iii)(I)(aa), 77z-1(a)(3)(B)(iii)(I)(aa).

Ylitlo filed the Complaint on July 9, 2024. (ECF 1.) In addition, on July 19, 2024, notice was published in connection with this action. (*See* ECF 31-1, Federman Decl. ¶ 2; *id.* Ex. A). Ylitalo, a member of the proposed Class, filed the Motion on September 17, 2024, exactly 60 days after the notice was published. Accordingly, Ylitalo timely filed a timely motion for appointment

as lead plaintiff in compliance with the PSLRA. 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(aa), 77z-1(a)(3)(B)(iii)(I)(aa).

### D.     Presumption of Lead Plaintiff

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." *In re Cendant Corp. Litig.*, 264 F.3d at 268. However, "[i]f no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." *Id.* Presently, there are no challenges by other Class members to the appointment of Ylitalo as lead plaintiff. Accordingly, the presumption of adequacy stands. *See, e.g., Arbitrage Fund v. Toronto-Dominion Bank*, No. 23-2763, 2023 WL 5550198, at *5 (D.N.J. Aug. 29, 2023) (finding presumption of adequacy must stand where no challenges were made); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 112 (D.N.J. 1999) ("Absent such a challenge, the presumption of adequacy will generally survive."); *Zuckerman v. Foxmeyer Health Corp.*, No. 96-2258, 1997 WL 314422, at *2 (N.D. Tex. Mar. 26, 1997) ("No purported class member has presented evidence to rebut this presumption. Therefore, the Court will appoint the movants as lead plaintiffs.").

Defendants, however, argue in their Response that Ylitalo's PSLRA certification is false and thus disqualifies him from serving as lead plaintiff.[4] (Resp. at 5.) Under the PSLRA, each plaintiff seeking to serve as a representative party on behalf of a class must provide a sworn certification with the complaint attesting to six items, 15 U.S.C. § 78u-4(a)(2)(A), 15 U.S.C. § 77z-1(a)(2)(A), including the identification of "any other action under this [sub]chapter, filed

---

[4] Defendants characterize Plaintiff's PSLRA certification as a "critical procedural requirement of the PSLRA" that "disqualif[ies] [Ylitalo] from service as lead plaintiff." (Resp. at 2.) But other courts in the District of New Jersey have addressed allegedly deficient PSLRA certifications in their consideration of whether the presumption of adequacy has been rebutted. *See, e.g.*, *Roby*, 2015 WL 1334320, at *9; *In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 WL 918535, at *2 (D.N.J. Mar. 3, 2015).

during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class . . . ." 15 U.S.C. §§ 77z-1(a)(2)(A)(v), 78u-4(a)(2)(A)(v).

In his PSLRA certification, which Plaintiff filed as an attachment to his Complaint, (ECF 1-1, "PSLRA Certification."), Plaintiff stated that he "[has] not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years." (PSLRA Certification ¶ 7.) Defendants note that, despite this sworn representation, Plaintiff filed a putative securities class action against ADP and ACI in the United States District Court for the Middle District of Florida in January 2024, *Ylitalo, et al. v. Automatic Data Processing, Inc., et al.*, No. 2:24-cv-00055-SPC-NPM (the "Florida Action"). (Resp. at 3.) Defendants argue that because this litigation was filed less than three years prior to the date of Plaintiff's PSLRA Certification, Plaintiff should have disclosed it in his certification. (*Id.* at 3-4.) Plaintiff does not deny that he filed the Florida Action but contends that his PSLRA Certification was not false because, under the PSLRA, filing a class action complaint does not constitute an application for lead plaintiff. (Opp. at 2-3.)

The Court declines to address Plaintiff's argument on statutory interpretation.[5] The Court instead requested that Plaintiff provide an amended PSLRA Certification that includes every securities action filed in the past three years in which Plaintiff has sought to serve, or served, as a representative party on behalf of a class. (ECF 45.) "Courts have found supplemental certifications sufficient to remedy deficiencies in the PSLRA certification." *Roby*, 2015 WL 1334320, at *9 (citing *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003)); *see also*

---

[5] Plaintiff did not cite any Third Circuit precedent in support of (or contrary to) his argument that his PSLRA Certification does not need to include securities actions in which he was the named Plaintiff but did not move for approval as lead plaintiff. (*See* Reply at 3.)

11

*Blake v. Canoo Inc.*, No. 21-2873, 2022 WL 599504, at *5–7 (C.D. Cal. Feb. 18, 2022) (allowing amended certifications to remedy alleged defects in original PSLRA certification); *Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, No. 04-1107, 2005 WL 1563206, at *4 (N.D. Ill. June 30, 2005) (same).

On June 5, 2025, Plaintiff filed an amended PSLRA Certification that includes all securities actions in the past three years in which Plaintiff was a named plaintiff and/or class representative, regardless of whether Plaintiff filed a motion for appointment of lead plaintiff in the action. (*See* ECF 46, the "Amended PSLRA Certification".) The Court is satisfied by Plaintiff's submission of the Amended PSLRA Certification and finds it sufficient to proceed under the circumstances.[6]

In sum, Ylitalo appears to have the largest financial interest, satisfied the Rule 23 requirements, and filed a timely motion. The presumption that Ylitalo is the most adequate plaintiff has not been rebutted by any Class members. For these reasons, the Court will appoint Ylitalo as lead plaintiff, and his motion to appoint lead plaintiff (ECF 31) is **GRANTED**.

### III.  APPOINTMENT OF LEAD AND LIAISON COUNSEL

Under 15 U.S.C. §§ 78u-4(a)(3)(B)(v) and 77z-1(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Because the Court finds Ylitalo to be the most adequate plaintiff, this task falls to him. Ylitalo moves for approval of Federman & Sherwood as Lead Counsel, and Kantrowitz, Goldhamer & Graifman, P.C. as Liaison Counsel. (ECF 31; *see also* Br. at 10.)

---

[6] In the Amended PSLRA Certification, Plaintiff states that he "sought to serve, nor served [sic]" as a representative party in the Florida Action. (ECF 46.) Plaintiff did not list any other actions in which he sought to serve or served as a representative party on behalf of a class in a securities action. Plaintiff is therefore not disqualified under the PSLRA's restriction prohibiting persons from acting as a lead plaintiff in more than five (5) securities class actions during any three-year period. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(vi), 77z-1(a)(3)(B)(vi).

There is "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Cendant Corp. Litig.*, 264 F.3d at 276. "When a properly-appointed lead plaintiff asks the court to approve its choice of lead counsel and of a retainer agreement, the question is not whether the court believes that the lead plaintiff could have made a better choice or gotten a better deal." *Id.* Rather, "the court's inquiry is appropriately limited to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* The Third Circuit considers the following factors in deciding whether the selection of lead plaintiff's counsel is appropriate: (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel. *Id.*

Ylitalo's chosen law firms have prosecuted securities class actions as well as other class actions. (*See* Federman Decl. Ex. A, Ex. B.) After reviewing the firms' resumes, the Court finds that both firms have experience litigating securities fraud class actions and are thus "competent to fulfill the duties of lead counsel and liaison counsel." *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *5 (D.N.J. Dec. 2, 2016). As a result, Ylitalo's motion to appoint lead counsel and liaison counsel is **GRANTED**.

IV.     **CONCLUSION**

For the reasons stated above, Ylitalo's motion for appointment as lead plaintiff and approval of counsel (ECF 31) is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:      Leda D. Wettre, U.S.M.J.
          Parties