**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DALE YLITALO, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-07635-JKS-LDW |
| *Plaintiff*, | Hon. Jamel K. Semper, U.S.D.J.<br>Hon. Leda Dunn Wettre, U.S.M.J. |
| v. | |
| AUTOMATIC DATA PROCESSING, INC., ADP, INC., and AMERICAN CENTURY INVESTMENT SERVICES, INC., | <u>Motion Return Date:</u> October 6, 2025 |
| *Defendants*. | <u>**ORAL ARGUMENT REQUESTED**</u> |

**DEFENDANTS AUTOMATIC DATA PROCESSING, INC.'S AND ADP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**VENABLE LLP**
George Kostolampros*                    *Admitted *Pro Hac Vice*.
600 Massachusetts Avenue NW
Washington, DC 20001
Tel.: (202) 344-4426
GKostolampros@venable.com

Xochitl S. Strohbehn*
Michael A. Guerra (ID# 089092013)
151 West 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 307-5500
Xochitl.Strohbehn@venable.com
MAGuerra@venable.com

Jonathan Perlman*
801 Brickell Ave, Suite 1500
Miami, Florida 33131
Tel.: (305) 349-2323
JEPerlman@venable.com

*Counsel for Defendants Automatic
Data Processing, Inc. and ADP, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF FACTS .......................................................................3

III.  ARGUMENT...........................................................................................9

A.    Ylitalo Lacks Article III Standing Because He Has Suffered No Injury in Fact. ..................................................................................9

B.    Ylitalo's Complaint Fails to State a Claim. .......................................11

1.    Ylitalo's federal and state securities law claims fail. ...............11

a)    Ylitalo fails to plead a security is at issue. .....................11

2.    Ylitalo did not sufficiently plead his Section 10(b) or state securities law claims under Counts I, II, and VII............16

a)    Ylitalo did not plead an actionable misstatement or omission...................................................................17

b)    Ylitalo fails to allege scienter. ........................................23

c)    Ylitalo has not pled loss causation. ................................25

3.    Ylitalo's claim under Section 12 of the Securities Act must be dismissed. ..................................................................27

4.    Ylitalo's control liability claims must be also dismissed. ........27

5.    Ylitalo's ERISA claim under 29 U.S.C. § 1106 fails. ..............29

6.    Ylitalo's claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, fails. ...................................................................................32

7.    Ylitalo has not sufficiently pled a negligent misrepresentation/gross negligence claim. ...............................34

8.    Ylitalo has not pled unjust enrichment under New Jersey law..........................................................................................37

IV.   CONCLUSION......................................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aetna Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010) .................................................................22

*AMR Realty Co. v. State Bureau of Sec.*,
  149 N.J. Super. 329 (N.J. Sup. Ct. App. Div. 1977) ........................................12

*In re Anadigics, Inc., Sec. Litig.*,
  No. 08-5572 (MLC), 2011 U.S. Dist. LEXIS 112587
  (D.N.J. Sep. 30, 2011) ........................................................................26

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009)...........................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................8

*Barbee v. Amira Nature Foods, Ltd.*,
  No. 21-12894 (MAS) (DEA), 2024 U.S. Dist. LEXIS 26124
  (D.N.J. Feb. 14, 2024) ........................................................................12

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) .................................................................28

*Breyer v. First Nat'l Monetary Corp.*,
  548 F. Supp. 955 (D.N.J. 1982).............................................................14

*Conte v. Promethean Inc.*,
  No. 21-20490 (KM) (JBC), 2023 U.S. Dist. LEXIS 128194
  (D.N.J. July 24, 2023).........................................................................37

*Crowell v. Morgan Stanley, Dean Witter Services Co., Inc.*,
  87 F. Supp. 29 1287, 1295 (S.D. Fla. 2000).............................................33

*Derobbio v. Harvest Cmtys. of Sioux City, Inc.*,
  No. 01-1120 (MLC), 2002 U.S. Dist. LEXIS 26706 (D.N.J. Oct.
  30, 2002) ........................................................................................17

*DiMartino v. BMW of N. Am., LLC*,
No. 15-8447 (WJM), 2016 U.S. Dist. LEXIS 106138
(D.N.J. Aug. 11, 2016) .........................................................................33

*Dimieri v. Medicis Pharms. Corp.*,
No. 2:14-cv-176, 2015 WL 1523909 (M.D. Fla. April 3, 2015) .......................34

*EMA Fin. v. TPT Glob. Tech., Inc.*,
No. 20-CV-8781 (VSB), 2023 U.S. Dist. LEXIS 192432
(S.D.N.Y. Oct. 26, 2023) ....................................................................21

*Employees' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan
Chase & Co.*,
804 F. Supp. 2d 141 (S.D.N.Y. 2011) ...................................................29

*Fellner v. Cameron*,
No. 2:10-cv-155, 2012 WL 5387696 (M.D. Fla. Oct. 5, 2012) .....................33

*Fox Int'l Rels. v. Fiserv Sec., Inc.*,
490 F. Supp. 2d 590 (E.D. Pa. 2007) ...................................................21

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ................................................................24

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ..........................................................................27

*Hatteras Press, Inc. v. Avanti Comput. Sys.*,
No. 16-5420 (MLC), 2017 U.S. Dist. LEXIS 101732
(D.N.J. June 30, 2017) .......................................................................37

*In re Hertz Global Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018) .......................................................23, 24, 25

*Houck v. Eos Energy Enters.*,
No. 23-cv-04113 (JKS) (MAH), 2024 U.S. Dist. LEXIS 203981
(D.N.J. Nov. 8, 2024) .........................................................................29

*Howard v. Arconic Inc.*,
No. 2:17-cv-1057, 2021 U.S. Dist. LEXIS 116935
(W.D. Pa. June 23, 2021) ..............................................................*passim*

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262, 280 (D.N.J. 2007) .......................................................26, 28

*Inventory Recovery Corp. v. Gabriel*,
    2012 U.S. Dist. LEXIS 100908 (D.N.J. July 20, 2012) ....................................35

*ISM Connect Inv. Grp. LLC v. ISM Connect, LLC*,
    No. 18-1055, 2018 U.S. Dist. LEXIS 152120 (D.N.J. Sep. 5, 2018)...........17, 25

*Santomenno ex. rel. John Hancock Trust v. John Hancock Life Ins.
    Co. (U.S.A.)*, 768 F.3d 284 (3d Cir. 2014).....................................................30, 31

*Leeder v. Nat'l Ass'n of Realtors*,
    601 F. Supp. 3d 301 (N.D. Ill. 2022).................................................................37

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
    151 F. Supp. 3d 319 (S.D.N.Y. 2015) ...............................................................23

*Lino v. City Investing Co.*,
    487 F.2d 689 (3d Cir. 1973) ........................................................................13, 15

*Livingston v. Trane Inc.*,
    2019 U.S. Dist. LEXIS 15497 (D.N.J. Jan. 31, 2019)........................................35

*Lord Abbett Inv. Tr. v. Valeant Pharms. Int'l, Inc.*,
    No. 17-6365, 2018 WL 3637514 (D.N.J. Jul. 31, 2018) ...................................24

*Lujan v. Def's. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024).....................................................................................*passim*

*Mallozzi v. Innovative Indus. Props.*,
    No. 22cv2359 (EP) (JRA), 2024 U.S. Dist. LEXIS 173865
    (D.N.J. Sep. 25, 2024) .......................................................................................17

*Marine Bank v. Weaver*,
    455 U.S. 551 (1982)...........................................................................................13

*Metz v. United Ctys. Bancorp*,
    61 F. Supp. 2d 364 (D.N.J. 1999).....................................................................11

*Michael W. v. Outlaw*,
  No. 16-8701 (RMB), 2017 U.S. Dist. LEXIS 238227
  (D.N.J. Nov. 21, 2017)......................................................................21

*Milnarik v. M-S Commodities, Inc.*,
  457 F.2d 274 (7th Cir. 1972) ...........................................................14

*Minshall v. TD Evergreen*,
  No. 8:05-CV-1232-T-26TGW, 2005 WL 8145046
  (M.D. Fla. Aug. 4, 2005) ..................................................................33

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries,
  LLC*,
  812 F.3d 294 (3d Cir. 2016) ...............................................................8

*Moore v. Bank of Am. N.A.*, No. 18-13727,
  2019 U.S. Dist. LEXIS 89363 (D.N.J. May 28, 2019).....................34

*Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*,
  685 F. App'x 96 (3d Cir. 2017) ...................................................15, 16

*In re Ocugen, Inc. Sec. Litig.*,
  No. 23-1570, 2024 U.S. App. LEXIS 6708
  (3d Cir. Mar. 21, 2024).....................................................................23

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016) .............................................................19

*Ortiz v. Canopy Growth Corp.*,
  537 F. Supp. 3d 621 (D.N.J. 2021)....................................................18

*Powell v. Seton Hall Univ.*,
  No. 2:21-cv-13709-WJM-JSA, 2022 U.S. Dist. LEXIS 75590
  (D.N.J. Apr. 26, 2022) ......................................................................35

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002) ...............................................................6

*Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron,
  Inc.*, 123 F.3d 111 (3d Cir.1997) ......................................................10

*Raines v. Byrd*,
  521 U.S. 811 (1997)..........................................................................10

*Rana Fin., LLC v. City Nat'l Bank of N.J.*,
  347 F. Supp. 3d 1147 (S.D. Fla. 2018) .........................................................35, 36

*Reinkraut v. FCA US Ltd. Liab. Co.*,
  Civil Action No. 23-02792, 2025 U.S. Dist. LEXIS
  124810 (D.N.J. June 30, 2025) (Semper, J.) ...............................................32, 33

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ..............................................................................30

*Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................................9

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ................................................................................9

*Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  682 F.2d 459 (3d Cir. 1982) ........................................................................13, 14

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) ................................................................................8

*Scott v. Vantage Corp.*, 64 F.4th 462 (3d Cir. 2023) ............................................38

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946).................................................................................*passim*

*Sharma v. Gupta*,
  No. 20-3446 (MAS) (DEA), 2022 U.S. Dist. LEXIS 60972
  (D.N.J. Mar. 31, 2022) ......................................................................................37

*Spear v. Fenkell*,
  No. 13-02391, 2015 U.S. Dist. LEXIS 76191
  (E.D. Pa. June 12, 2015) ...................................................................................32

*Steinhardt Grp. Inc. v. Citicorp*,
  126 F.3d 144 (3d Cir. 1997) ........................................................................13, 15

*Sterling v. Iris Energy Ltd. MacQuarie Capital USA Inc.*,
  No. 22-07273, 2024 U.S. Dist. LEXIS 175459
  (D.N.J. Sep. 27, 2024) (Semper, J.)............................................................*passim*

*Stratis v. BMW of N. Am., LLC*,
    No. 2:22-cv-06929 (BRM) (JRA), 2023 U.S. Dist. LEXIS 72800
    (D.N.J. April 26, 2023) ................................................................*passim*

*Sweda v. Univ. of Penn.*,
    923 F.3d 320 (3d. Cir. 2019) ............................................................30

*Taliaferro v. Darby Twp. Zoning Bd.*,
    458 F.3d 181 (3d Cir. 2006) .............................................................10

*Tanaskovic v. Realogy Holdings Corp.*,
    No. 19-15053 (SRC), 2021 U.S. Dist. LEXIS 11090
    (D.N.J. Jan. 21, 2021) .....................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................9, 24

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ...................................................35, 37

*Tsc Indus. v. Northway*,
    426 U.S. 438 (1976)........................................................................22

*Wasnowic v. Chi. Bd. of Trade*,
    352 F. Supp. 1066 (M.D. Pa. 1972)..................................................14

*In re Wilmington Trust Corp. ERISA Litig.*,
    943 F. Supp. 2d 478 (D. Del. 2013)..................................................11

*Wilson v. Bernstock*, 195 F. Supp. 2d 619
    (D.N.J. 2002)...................................................................................26

*Yogo Factory Franchising, Inc. v. Ying*,
    No. 13-630 (JAP) (TJB), 2014 U.S. Dist. LEXIS 61968
    (D.N.J. May 5, 2014) .......................................................................11

*Young Cho v. Prudential Ins. Co. of Am.*,
    Civil Action No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS
    185397 (D.N.J. Sep. 27, 2021) ........................................................33

**Statutes**

15 U.S.C. § 77l...............................................................................*passim*

15 U.S.C. § 77o ........................................................................................*passim*

15 U.S.C. § 77b(a)(1) ...........................................................................12

15 U.S.C. § 78c(a)(10) ..........................................................................12

15 U.S.C. § 78j(b) ..................................................................................*passim*

15 U.S.C. § 78t(a) ..................................................................................*passim*

29 U.S.C. § 1002(a)(21)(A) & (B) .......................................................30

29 U.S.C. § 1106 ....................................................................................*passim*

Fla. Stat. § 501.201 ...............................................................................*passim*

N.J. Stat. § 49:3-71 ...............................................................................*passim*

Private Securities Litigation Reform Act of 1995,
    Pub. L. No. 104-67, 109 Stat. 737 (1995) ....................................*passim*

## Court Rules

Fed. R. Civ. P. Rule 9(b) .......................................................................*passim*

Fed. R. Civ. P. Rule 12(b)(1) ................................................................1, 8

Fed. R. Civ. P. Rule 12(b)(6) ................................................................*passim*

## Other Authorities

https://www.irs.gov/retirement-plans/plan-sponsor/simple-ira-plan .......................13

Pursuant to Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") Defendants Automatic Data Processing, Inc. ("Automatic"), and ADP, Inc. ("ADP," and with Automatic, the "ADP Defendants") respectfully move the Court to dismiss Plaintiff Dale Ylitalo's ("Plaintiff" or "Ylitalo") putative Class Action Complaint ("Complaint") with prejudice for lack of standing and for failure to state a claim.

## I.    **INTRODUCTION**

This Complaint is Ylitalo's latest effort to pursue the same claims he asserted in Florida federal court (*Ylitalo, et al. v. Automatic Data Processing, Inc., et al*, 24-cv-55 (M.D. Fla.)). After all defendants moved to dismiss in Florida, Plaintiff voluntarily withdrew his complaint rather than face its certain dismissal. The Complaint's threadbare allegations are the same his Florida counsel pursued *four times* before in Florida federal and state courts against the ADP Defendants. As in those actions, Plaintiff alleges here that ADP used sales representatives, some unlicensed to sell securities, to sell payroll services and retirement plans, including SIMPLE IRA plans. Ylitalo alleges that the SIMPLE IRA retirement plan his company, R4 Construction LLC ("R4"), established and purchased from ADP is a security even though employees like Ylitalo directed R4 to make contributions into their SIMPLE IRA accounts under R4's SIMPLE IRA plan that are ultimately invested in mutual funds professionally managed by Defendant ACI.

Ylitalo's allegations do not pass muster here, just as they have not before where Ylitalo either voluntarily dismissed the Complaint (*Ylitalo*) or a court found in ADP's favor (*see Schwartz v. ADP, Inc., et al.*, 21-cv-283-SPC-KCD (M.D. Fla.), *ADP, Inc. v. Schwartz*, 19-CA-3479 (Fla. Dist. Ct. App.) and *ADP, Inc. v. Schwartz*, 18-CA-5454 (Fla. Dist. Ct. App.)). Ylitalo's claims should be dismissed for the reasons set forth below.

First, Ylitalo suffered no cognizable injury as he alleges his account has earned a return on the money invested. Thus, as a matter of law, Ylitalo cannot establish standing. Indeed, during the putative Class Period (i.e., since inception), Ylitalo's R4 SIMPLE IRA Plan ("R4 SIMPLE IRA Plan") has actually earned *more* than the "projected return."

Second, Ylitalo's securities law claims fail because the R4 SIMPLE IRA Plan is not a security. Indeed, no court has ever found an IRA plan to be a security. Moreover, the Third Circuit has held that individual commodities trading accounts (functionally akin to SIMPLE IRAs) are not securities. And so it is here—the R4 SIMPLE IRA Plan is not a security, and Ylitalo's securities laws claims therefore fail.

Third, Ylitalo has not pled the elements of his claims with the particularity required by heightened pleading standards of the PSLRA (defined below) and Fed. R. Civ. P. Rule 9(b). Ylitalo's claims rest on inactionable statements and omissions,

namely that the ADP Defendants misrepresented "estimated" rates of return, and that ADP did not disclose other information, e.g., that most of the ADP Defendants' sales representatives who purportedly "sold" SIMPLE IRAs were not licensed to sell securities, had to meet sales quotas, and were encouraged or required to sell SIMPLE IRAs over other retirement plans. The projected rate of return statement is not actionable because the PSLRA provides a safe harbor for such forward-looking statements. Additionally, Plaintiff's omissions claims are not actionable under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5(b). Further, other than conclusory allegations, Ylitalo fails to plead scienter. Ylitalo also fails to plead loss causation he has not plead a causal link between any purported misrepresentation or omission and any supposed economic harm.

Fourth, Ylitalo's state law claims are insufficiently pled. Rather than plead facts establishing the elements of these claims, Plaintiff only asserts conclusory allegations that do not satisfy Rule 9(b)'s rigorous pleading standard.

## II.    STATEMENT OF FACTS[1]

Ylitalo asserts seven counts against the ADP Defendants, under federal securities laws, ERISA, common law, Florida's Deceptive and Unfair Trade

---

[1]    The allegations are taken from the Complaint. Under Rule 12(b)(6), of the Federal Rules of Civil Procedure, only well-pled allegations of fact are accepted as true for purposes of this Motion to Dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).

Practices Act, and New Jersey's Uniform Securities Law.[2] Ylitalo's claims all stem from his core allegation that "ADP" sold SIMPLE IRAs through ADP employees, some of whom were not registered to sell securities. Dkt. No. 1 ¶¶ 4-5.

Ylitalo alleges that the ADP Defendants offer human resources management software and services such as payroll services and benefits administration and that ADP cross-sells retirement plans including SIMPLE IRA plans. *Id.* ¶¶ 2-4, 68. Further, Plaintiff alleges that because employees invest in the SIMPLE IRA retirement plan set up by their employer ultimately "are invested in American Century Investments' mutual funds as selected and sold at the time of sale of the SIMPLE IRAs, [this] mak[es] them securities governed by the Exchange Act." *Id.* ¶ 26.

Plaintiff alleges the ADP Defendants created an online "SIMPLE Calculator" to calculate a **projected** rate of return to encourage sales of SIMPLE IRAs, and that they used the SIMPLE Calculator to "give customers, such as Plaintiff and the Class Members, estimated returns based on unreliable and unlikely return rates." *Id.* ¶¶ 39-41, 61-64. Plaintiff alleges that sales representatives employed in "ADP Small

---

[2]    Plaintiff asserts the following causes of action: Violation of Section 12(a)(2), 15 U.S.C. § 77(a)(2) and Section 15, 15 U.S.C. § 77o(a) of the Securities Act (Count I); Sections 10(b), 15 U.S.C. § 78j(b), and 20(a), 15 U.S.C. § 78t(a), of the Exchange Act (Count II); 29 U.S.C. § 1106 (Count III); gross negligence/negligent misrepresentation (Count IV); unjust enrichment (Count V); The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. 501.201, *et seq.* (Count VI); and Violation of N.J.S.A § 49:3-71 (Count VII).

Business Services ("SBS")" *Id.* ¶33, sold "Plaintiff and the Class Members on the SIMPLE IRAs by estimating their returns at 6% or higher." *Id.* ¶¶ 65-66, 69, 80. Plaintiff conclusorily alleges that "[a]s Defendants know, this estimate far exceeds the actual returns Plaintiff and the Class Members see on their SIMPLE IRAs." *Id.* ¶ 65. Plaintiff alleges that on July 26, 2023, he spoke with Paul Long, an unlicensed SBS Representative, about a SIMPLE IRA plan and that Long used the SIMPLE Calculator and represented that the R4 SIMPLE IRA Plan would yield an "estimated" 6.00% return. *Id.* ¶ 68.

In addition to the alleged misrepresentation projecting a rate of possible long-term return, plaintiff alleges the following omissions:

- SBS sales representatives' earned "commissions, including bonuses, prizes, days off and other benefits for the sale of certain SIMPLE IRAs." Dkt. No. 1 ¶ 121(a).

- SBS representatives had monthly sales quotas for SIMPLE IRAs. *Id.* ¶ 121(b).

- SBS representatives who purportedly sold SIMPLE IRAs were unlicensed and unregistered sales personnel, including Long. *Id.* ¶ 121(c); *id.* ¶¶ 70-73.

- SBS sales representatives were required and/or encouraged to sell SIMPLE IRA plans over other IRA plans. *See, e.g.*, *id.* ¶¶ 73, 84.

Plaintiff claims Defendants knew of and aided and encouraged Long's (and the SBS Representatives') failure to disclose these supposed facts. *Id.* ¶¶ 81-84. Plaintiff concludes by alleging that he relied on "Long's misrepresentations,

omissions, and concealments" and purchased a SIMPLE IRA in which he invested over $2,000 in ACI mutual funds, which ostensibly have earned a return of close to 4%. *Id.* ¶¶ 75-78.

Plaintiff and ADP entered into a SIMPLE IRA Plan Administrative Services Agreement and other agreements (collectively the "R4 Agreement") on August 4, 2023. A copy of the R4 Agreement is attached as Exhibit "A" to the Declaration of Michael A. Guerra ("Guerra Decl.") in support of this Motion.[3] The R4 Agreement, which is incorporated into the Complaint by reference, sets forth that the underlying SIMPLE IRA is the employer's SIMPLE IRA plan, which the employer (i.e., R4 and its manager Ylitalo) adopted, and then engaged ADP, through the administrative services agreement, to provide administrative services to the plan. Guerra Decl., Ex. A. The Contract also provides that the employer (i.e., R4) acknowledges that:

> ADP [INC.] SHALL NOT EXERCISE ANY DISCRETIONARY AUTHORITY OR DISCRETIONARY CONTROL RESPECTING MANAGEMENT OF THE PLAN OR MANAGEMENT OR DISPOSITION OF PLAN ASSETS. . . .

*Id.* at 18 (Section 6 titled "Status of ADP"). In that same provision, Ylitalo also

---

[3]    The R4 Agreement consists of a series of agreements between Ylitalo as representative for employer R4 Construction and ADP, Inc. that define the parties' agreed upon duties to each other. This Court may properly consider the R4 Agreement because it is referenced and central to the Complaint, Dkt. No. 1 ¶¶ 2-3, 19-20, 28. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)("[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim . . . .").

acknowledges that ADP is not a "fiduciary" within the meaning of ERISA. *Id.* Under the terms of the R4 Agreement, ADP waived the initial set up fee and all monthly maintenance fees until 2024. *Id.* at 16.

In signing the R4 Agreement, Ylitalo acknowledged and agreed that R4 was not induced to "enter into this Agreement by any representation or warranty not set forth in this Agreement." *Id.* at 18. The R4 Agreement also provides that ADP did not "render investment, financial or tax advice" and that neither ADP nor its affiliates, including ADP BrokerDealer Inc., provided any advice at the time of the transaction for a fee or any compensation. *Id.* at 18.[4] Further, the R4 Agreement notified Ylitalo that there may short-term losses and that "[t]here is no guarantee a fund will accomplish its objectives and the investments can lose money." *Id.* (Notice of Automatic Enrollment).

Despite acknowledging in his Complaint that he not only has suffered no loss from his $2,000 investment but has purportedly earned a 4% return, Ylitalo claims he suffered financial damages, including monetary losses, attorney fees, and other associated costs due to Defendants' purported misrepresentations. Dkt. No. 1 ¶ 97.

---

[4]    The R4 Agreement provides that "[i]n the event of any action or proceeding between the parties, . . . as to their obligations and rights under this Agreement, the prevailing party shall be entitled to all costs incurred in connection therewith, including reasonable legal fees." *Id.* at 19.

In fact, Ylitalo's rate of return on his IRA account since inception is 12.3%.[5]

## **APPLICABLE LEGAL STANDARDS**

To survive a 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face.[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 681. Courts must (1) accept well-pled factual allegations as true; (2) view well-pled allegations in the light most favorable to the plaintiff; but need not credit "labels and conclusions" or "a formulaic recitation of the elements of" a claim. *Iqbal*, 556 U.S. at 678.

A "plaintiff alleging fraud must . . . support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,

---

[5]    *See* Declaration of Margaret Murphy (the "Murphy Decl.") ¶ 4 (declaring that Plaintiff's rate of return on his SIMPLE IRA account investments between inception and July 24, 2025 is 12.3%) being filed in support of ACI's Motion to Dismiss and Joinder, which is being filed contemporaneously with this Motion.

[6]    A motion to dismiss for lack of standing is brought under Rule 12(b)(1) because standing is a prerequisite to the Court's subject matter jurisdiction under Article III. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial challenge to standing is evaluated under the same legal standard as a Rule 12(b)(6) motion. *Id.*

812 F.3d 294, 307 (3d Cir. 2016) (citations omitted). Rule 9(b)'s heightened pleading standard "has been rigorously applied in securities fraud cases." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (*citing In re Burlington Coat Factory*, 114 F.3d 1410, 1417 (3d Cir. 1997)).

The PSLRA "imposes another layer of factual particularity to allegations of securities fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). The plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007) (*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, & n.12 (1976)). To satisfy this particularity requirement, the plaintiff must plead "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

## III.    ARGUMENT

### A.    Ylitalo Lacks Article III Standing Because He Has Suffered No Injury in Fact.

Standing is a threshold question of justiciability, going to whether or not an alleged claim for relief presents a "case or controversy" over which a federal court

may exercise jurisdiction under Article III of the Constitution. *Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir.1997). The Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). To establish standing, Ylitalo must plead (i) an "injury in fact" (ii) causally connected to the conduct of the defendant and (iii) likely to be redressed by a favorable decision. *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560-61 (1992). "In other words, the plaintiff must show that he or she personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . ." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188–89 (3d Cir. 2006).

Here, Ylitalo has not been damaged. By alleging that he earned a return close to 4%, Plaintiff admits in his Complaint that he has suffered no out-of-pocket loss. Dkt. No. 1 ¶¶ 69, 78.[7] Without suffering an actual net monetary loss on his investment, Ylitalo cannot establish an "injury in fact" and thus has no standing. *See*

---

[7]    As the ADP Defendants (and the American Century Defendant) have previously noted to the Court, Ylitalo's rate of return has exceeded the rate of return Ylitalo claims he "expected." Murphy Decl. ¶ 4 (declaring that Ylitalo's rate of return, from inception to July 24, 2025, on investments in his SIMPLE IRA is 12.3%). Courts "may consider 'a document integral to or explicitly relied upon in the complaint,' whether or not the document is attached to the challenged pleading." *Yogo Factory Franchising, Inc. v. Ying*, No. 13-630 (JAP) (TJB), 2014 U.S. Dist. LEXIS 61968, at *15 (D.N.J. May 5, 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Furthermore, a court need not accept allegations as true that are contradicted by the documents upon which a party's claims are based." *Id.*

*In re Wilmington Trust Corp. ERISA Litig.*, 943 F. Supp. 2d 478, 487-88 (D. Del. 2013) (dismissing for lack of Article III standing ERISA claim where plaintiff suffered no net loss from purchases and sales of allegedly artificially inflated stock).

**B.    Ylitalo's Complaint Fails to State a Claim.**

**1.    Ylitalo's federal and state securities law claims fail.**

*a)    Ylitalo fails to plead a security is at issue.*

To state a claim under the federal and state securities laws, as Ylitalo purports to do in claims under Counts I, II and VII[8], Plaintiff must allege facts that could establish that the R4 SIMPLE IRA Plan is a security. Instead, Ylitalo conclusorily alleges that the *R4 SIMPLE IRA Plan* he opened is the security. Dkt. No. 1 ¶¶ 4, 26. But a SIMPLE IRA is not a security as a matter of federal or New Jersey law—it is nothing more than an account (akin to any bank or trading account) in which funds are deposited that the account holder may later choose to invest. Ylitalo has pled no facts to establish the R4 SIMPLE IRA Plan is a security,[9] and, accordingly, his state and federal securities law claims must be dismissed.[10]

---

[8]    Count I alleges "Violation of Section 12(a)(2), 15 U.S.C. § 77(a)(2) and Section 15, 15 U.S.C. § 77o(a) of the Securities Act"; Count II alleges "Violation of Sections 10(b) 15 U.S.C. § 78j(b) and Section 20(a), 15 U.S.C. § 78t(a) of the Exchange Act"; and Count VI alleges "Violation of N.J.S.A. § 49:3-71."

[9]    Plaintiff does acknowledge in the Complaint that the funds within the R4 SIMPLE IRA Plan account are ultimately "invested in" mutual funds which are securities. Dkt. No. 1 ¶¶ 26-32.

[10]    Courts routinely dismiss N.J.S.A. 49:3-71 claims following dismissal of Section 10(b) and Rule 10b-5 claims. *Metz v. United Ctys. Bancorp*, 61 F. Supp. 2d

As an initial matter, a SIMPLE IRA account is not listed in the specifically enumerated categories of securities set forth in either the federal securities laws or New Jersey's Uniform Securities Law. *See* 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10); N.J.S.A. § 49:3-49(m). Therefore, a SIMPLE IRA can only constitute a security if it fits within the catchall "investment contract" definition determined by the test articulated by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)[11], which Ylitalo has not even alleged. Under *Howey*, an investment contract is comprised of: (1) the investment of money, (2) in a common enterprise, (3) with the expectation of profit, (4) to come solely from the efforts of others. *Id.* at 301. As set forth below, the R4 SIMPLE IRA Plan is not an investment contract under the *Howey* test.

**First**, Ylitalo has not pled an investment of money under *Howey*. Under the *Howey* test, the investment of money prong requires a purchaser to risk financial loss

---

364, 380 (D.N.J. 1999) (dismissing New Jersey securities law claim due to plaintiff's failure to plead damages contemplated by the statute and stating that there was no "reason to believe that the New Jersey statute is any more or less exacting than the corresponding federal statutes"); *Barbee v. Amira Nature Foods, Ltd.*, No. 21-12894 (MAS) (DEA), 2024 U.S. Dist. LEXIS 26124, at *20 n.9 (D.N.J. Feb. 14, 2024) (dismissing New Jersey Securities Law claim for the same reasons the court dismissed the federal securities claims and recognizing that "courts have previously found that the New Jersey Uniform Securities Act mirrors the federal securities law requirement").

[11]    Courts applying New Jersey state law have adopted the *Howey* test. *See, e.g.*, *AMR Realty Co. v. State Bureau of Sec.*, 149 N.J. Super. 329, 338-39 (N.J. Sup. Ct. App. Div. 1977).

from his investment. *Marine Bank v. Weaver,* 455 U.S. 551, 558-59 (1982). Plaintiff, however, does not allege that he was "subjected to financial loss" just by opening his R4 SIMPLE IRA Plan account. Instead, he repeatedly alleges that, when he opened his R4 SIMPLE IRA Plan account, the funds were invested in certain American Century mutual funds "as selected and sold at the time of sale of the SIMPLE IRAs." *See, e.g.*, Dkt. No. 1 ¶¶ 5, 26, 34, 76, 91. The act of opening a SIMPLE IRA account, without more, is not alleged (nor could it be alleged) to create any risk of loss to Plaintiff's funds. A SIMPLE IRA is an employer-sponsored retirement savings plan[12] that permits employees like Plaintiff to place earnings in an account that they may invest on a tax deferred basis.

**Second**, Ylitalo also has not pled the second element under *Howey*—that there was a "common enterprise." The Third Circuit applies a "horizontal commonality" approach to evaluate whether this second element exists. *See, e.g.*, *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 152 (3d Cir. 1997); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459, 460 (3d Cir. 1982); *Lino v. City Investing Co.*, 487 F.2d 689, 692 (3d Cir. 1973). Horizontal commonality requires a pooling of investor's funds and distribution of profits and losses on a pro-rata basis among investors. *Steinhardt*, 126 F.3d at 151.

---

[12]    https://www.irs.gov/retirement-plans/plan-sponsor/simple-ira-plan.

The Third Circuit has applied this same test to hold that a commodities trading account is not an investment contract under *Howey*. *Salcer*, 682 F.2d at 460; *see also Wasnowic v. Chi. Bd. of Trade*, 352 F. Supp. 1066, 1069 (M.D. Pa. 1972) (holding that discretionary commodities trading account is not a security under *Howey* because there was neither a common enterprise nor a pooling of funds for a common purpose), *aff'd* 491 F.2d 752 (3d Cir. 1973); *Breyer v. First Nat'l Monetary Corp.*, 548 F. Supp. 955, 958 n.6 (D.N.J. 1982) (reciting that, in an earlier opinion denying a TRO, the court held that a commodities trading account did not constitute a security because it was not a common enterprise). Indeed, as here, the Third Circuit found no common enterprise where the funds in each individual account were not pooled, and each account's performance was independent of the performance of the others' performance. *Wasnowic*, 352 F. Supp. at 1068-69 (adopting the common enterprise test articulated in *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972)). Plaintiff has alleged no facts indicating that, when he opened the R4 SIMPLE IRA Plan account, the ADP Defendants pooled his funds with anyone else's funds, and thus, there is no horizontal commonality as in *Salcer* and *Wasnowic*.

**Third**, Ylitalo has not pled facts that could establish the third element under *Howey* as he does not allege a reasonable expectation of profit from merely opening his R4 SIMPLE IRA Plan account (apart from investing in the ACI mutual funds).

The Third Circuit has defined a reasonable expectation of profit as requiring "that the purchaser be attracted to the investment by the prospect of a profit on the investment rather than a desire to use or consume the item purchased . . . [citations] 'where the investor is required to perform some duties, as long as they are nominal or limited and would have little direct effect upon receipt by the participant of the benefits promised by the promoters.'" *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 100-01 (3d Cir. 2017) (quoting *Steinhardt*, 126 F.3d at 152-53 and *Lino v. City Investing Co.*, 487 F.2d 689, 692 (3d Cir. 1973)). Ylitalo does not allege that he reasonably expected a profit due to the ADP Defendants' efforts in connection with his R4 SIMPLE IRA Plan account (or SIMPLE IRA Plans as a whole). Rather, he alleges only that ADP's online "SIMPLE Calculator" allowed it to calculate the "***projected*** return on investment offered with a SIMPLE IRA ***invested in securities provided by American Century Investments***." Dkt. No. 1 ¶ 61 (emphases added).

Just as importantly, Ylitalo does not allege any expectation of profits due solely from the efforts of others. Nor could he. The underlying R4 Agreement makes clear that "ADP [INC.] SHALL NOT EXERCISE ANY DISCRETIONARY AUTHORITY OR DISCRETIONARY CONTROL RESPECTING MANAGEMENT OF THE PLAN OR MANAGEMENT OR DISPOSITION OF PLAN ASSETS." Guerra Decl. Ex. A at 18 (Section 6 titled "Status of ADP").

Rather, under the R4 Agreement, it is *Ylitalo* who controls investment and management of the funds in *his account*. In *Northeast Revenue Services, LLC. v. Maps Indeed, Inc.*, 685 F. App'x. 96 (3d Cir. 2017), the Third Circuit affirmed the district court's holding that an investment contract did not exist where plaintiff's profits under a contract were not derived solely from the efforts of others, but were also depended on the plaintiff's efforts. *Ne. Revenue*, 685 F. App'x. at 101. As in *Northeast Revenue*, Plaintiff has not alleged any expectation of profits, solely from the efforts of others as to the R4 SIMPLE IRA Plan account itself and has thus failed to plead this element of the *Howey* test.

At bottom, the R4 SIMPLE IRA Plan is not a security, and therefore Ylitalo's securities law claims should be dismissed.

### 2. Ylitalo did not sufficiently plead his Section 10(b) or state securities law claims under Counts I, II, and VII.

In addition to failing to plead a security, Ylitalo has also otherwise failed to state a securities fraud claim under Section 10(b) or under state law. Section 10(b) and Rule 10b-5, promulgated thereunder, makes it unlawful with respect to the sale of a security to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024). "To state a securities fraud claim pursuant to Section 10(b) and Rule 10b-5, a plaintiff 'must

allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation.'" *Sterling v. Iris Energy Ltd. MacQuarie Capital USA Inc.*, No. 22-07273, 2024 U.S. Dist. LEXIS 175459, at *34, 47 (D.N.J. Sep. 27, 2024) (Semper, J.) (citing *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014)); *Mallozzi v. Innovative Indus. Props.*, No. 22cv2359 (EP) (JRA), 2024 U.S. Dist. LEXIS 173865, at *16 (D.N.J. Sep. 25, 2024) (same, quoting *Moab Partners*).

Courts have recognized that "the basic elements of a cause of action under the NJUSA [New Jersey Uniform Securities Act] are substantially the same as those of Section 10(b) of the Exchange Act: (1) an untrue material statement or omission; (2) scienter; (3) causation; and (4) injury to a plaintiff." *Derobbio v. Harvest Cmtys. of Sioux City, Inc.*, No. 01-1120 (MLC), 2002 U.S. Dist. LEXIS 26706, at *20 (D.N.J. Oct. 30, 2002); *ISM Connect Inv. Grp. LLC v. ISM Connect, LLC*, No. 18-1055 (WHW-CLW), 2018 U.S. Dist. LEXIS 152120, at *31-32 (D.N.J. Sep. 5, 2018) (recognizing that "Section 10(b) and Rule 10b-5 largely track the New Jersey securities fraud statutes").

### a) *Ylitalo did not plead an actionable misstatement or omission.*

Plaintiff's fraud claim rests on the following allegations—(1) purported "[m]isrepresentations" as to an "estimated" and/or "projected" rate of return, and

17

(2) purported omissions regarding SBS Representatives, including that they were required to be licensed as broker-dealers but were not, had sales quotas, were encouraged to sell SIMPLE IRAs instead of any other plan, and received commissions, bonuses and other incentives to sell SIMPLE IRAs. None of these are actionable statements.

First, Ylitalo's allegation that the ADP Defendants made a purported misstatement regarding the "projected rate of return" is an inactionable forward-looking statement. Under the PSLRA, projections are forward-looking statements. *See* 15 U.S.C. § 78u-5(i)(1). "When an allegation involves a prediction, the Safe Harbor provision of the PSLRA immunizes from liability any forward-looking statement that 'is identified as such and accompanied by meaningful cautionary language; or is immaterial; or [where] the plaintiff fails to show the statement was made with actual knowledge of its falsehood.'" *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 640 (D.N.J. 2021); *see also Tanaskovic v. Realogy Holdings Corp.*, No. 19-15053 (SRC), 2021 U.S. Dist. LEXIS 11090, at *48 (D.N.J. Jan. 21, 2021) (dismissing complaint in part on grounds that claims relied on statements related to expected performance that the court held was forward-looking statements).

Here, the Complaint itself makes clear that the purported statement made regarding the expected rate of return was forward-looking. Indeed, Ylitalo alleges that the ADP employee described the rate of return Ylitalo might expect as merely

18

"*projected*" or "*estimated*." Dkt. No. 1 ¶¶ 35, 41, 61, 63-66, 69, 80, 139 (emphases added). Forward-looking statements, such as those here, are inactionable unless accompanied by factual allegations demonstrating with particularity that the statements were false when made. *See OFI Asset Mgmt. v. Cooper Tire & Rubber,* 834 F.3d 481, 490 (3d Cir. 2016) (quoting 15 U.S.C. § 78u-5(c)(1)). Ylitalo states conclusorily that SBS Representatives estimated rates of return "based on unreliable and unlikely return rates" or "used inaccurate estimated investment return rates via the SIMPLE Calculator . . . ." Dkt. No. 1 ¶¶ 64, 139. Plaintiff, however, alleges no facts, let alone any with particularity, suggesting that a 6% projected long-term return was "inaccurate," "unreliable or unlikely," much less that Defendants knew that to be the case.

Second, Ylitalo's allegations that the ADP Defendants omitted material information are also inactionable. Plaintiff alleges that the ADP Defendants concealed that SBS Representatives were unlicensed and unregistered as broker-dealers in violation of Section 15 of the Exchange Act, that SBS Representatives were trained and incentivized to sell SIMPLE IRAs through receipt of commissions, bonuses, prizes, and other things, that SBS Representatives had certain sales quotas, and that SBS Representatives were pushed to sell SIMPLE IRAs over all other retirement plans. *See, e.g.*, Dkt. No. 1 ¶¶ 138, 158, 178. The Supreme Court's ruling in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024),

makes plain that Ylitalo's omission allegations cannot give rise to a securities fraud claim.

The Supreme Court in *Moab* held that Rule 10b–5(b) [and §10(b)] merely "prohibits omitting material facts necessary to make the statements made not misleading . . . . The Rule therefore covers [only] half-truths, not pure omissions." *Id.* at *264. The Court explained that "[l]ogically… the Rule requires identifying affirmative assertions (i.e. "statements made") before determining if other facts are needed to make those statements 'not misleading.'" *Id.* The Court gave as "[a] classic example of an actionable half-truth in contract law [] the seller who reveals that there may be two new roads near a property he is selling, but fails to disclose that a third potential road might bisect the property." *Id.* at *263-64. The Court then repeated for emphasis: "It once again 'bears emphasis that § 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. at 264 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27,44 (2011) (quoting Rule 10b–5(b)).

As *Moab* instructs, we begin by examining any misleading "affirmative assertions" Defendants made that Plaintiff claims were rendered misleading by omission of other facts needed to make those statements "not misleading." Plaintiff,

however, does not plead the existence of an incomplete affirmative statement rendered misleading by an omitted part. Rather, Plaintiff seeks to hold Defendants liable for failing to speak at all on various subjects, including not disclosing whether his SBS representative held a securities license. This is precisely the type of "pure" omission claim *Moab* held does not exist under Section 10(b).

In addition, Ylitalo's omissions claim fails because he is improperly seeking to bootstrap a Section 15 claim (making it unlawful to act as an unregistered broker-dealer) into a securities fraud claim to avoid dismissal of a Section 15 claim under the long line of authorities holding there is no private right of action under Section 15. *See, e.g.*, *Fox Int'l Rels. v. Fiserv Sec., Inc.*, 490 F. Supp. 2d 590, 611 (E.D. Pa. 2007) (joining "'overwhelming majority' of courts" to hold that Section 15 does not confer a private right of action); *EMA Fin. v. TPT Glob. Tech., Inc.*, No. 20-CV-8781 (VSB), 2023 U.S. Dist. LEXIS 192432, at *22 (S.D.N.Y. Oct. 26, 2023) (recognizing that Section 15 "provides no private right of action"). In the Florida complaint, Ylitalo asserted stand-alone counts alleging violation of Section 15 of the Exchange Act.[13] Guerra Decl. Ex. B (*Ylitalo, et al. v. Automatic Data Processing, Inc. et al.*, Complaint (M.D. Fla.) (Counts II & III)). Plaintiff's Section 15 claim

---

[13]    The Court may properly take judicial notice of what Plaintiff pled in the Florida action. *See, e.g.*, *Michael W. v. Outlaw*, No. 16-8701 (RMB), 2017 U.S. Dist. LEXIS 238227, at *3 (D.N.J. Nov. 21, 2017) ("A federal court may take judicial notice of the contents of another court's docket").

allegations there included the same omission allegations that undergird his securities law claims here, e.g., sale quotas and "bribed unlicensed and unregistered SBS sales representatives." After the Florida defendants moved to dismiss, including raising that there is no private right of action under Section 15, Ylitalo voluntarily dismissed the complaint. Guerra Decl. Ex. C (Motion to Dismiss Florida Complaint at 18). Apparently now recognizing the absence of a private right of action under Section 15, Ylitalo recasts his Section 15 claim as an omission claim. Simply changing the label does not give rise to a right of action. For this reason too, Ylitalo's 10(b) omission claims should be dismissed.

Finally, the purported omissions Ylitalo alleges are immaterial. "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Tsc Indus. v. Northway*, 426 U.S. 438, 449 (1976); *In re Aetna Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (affirming district court's dismissal of Section 10(b) claim because the alleged misstatements were, among other things, immaterial as a matter of law). "'[A]lthough questions of materiality have traditionally been viewed as particularly appropriate for the trier of fact, complaints alleging securities fraud often contain claims of omissions or misstatements that are obviously so unimportant that courts can rule them immaterial as a matter of law at the pleading stage.'" *Aetna Sec. Litig.*, 617 F.3d at 283 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Courts deem "subjective or vague opinions and general statements of intent or optimism as immaterial, because reasonable investors would not rely upon them in deciding how to act." *In re Ocugen, Inc. Sec. Litig.*, No. 23-1570, 2024 U.S. App. LEXIS 6708, at \*5 (3d Cir. Mar. 21, 2024); *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 151 F. Supp. 3d 319, 329 (S.D.N.Y. 2015) (holding that omissions were immaterial because plaintiff failed to plead facts demonstrating it would have acted differently if it had known of the purportedly concealed facts).

Here, Plaintiff only conclusorily alleges that R4 would not have opened the R4 SIMPLE IRA Plan if it had known that SBS Representatives were mostly unlicensed, were trained and incentivized to sell SIMPLE IRAs through receipt of commissions, bonuses, prizes, and other things, that SBS Representatives had certain sales quotas, and that SBS Representatives were pushed to sell SIMPLE IRAs over all other retirement plans. *See, e.g.*, Dkt. No. 1 ¶¶ 138, 158, 178. These omissions are therefore immaterial as a matter of law. *See, e.g.*, *Ocugen, Inc. Sec. Litig.*, 2024 U.S. App. LEXIS 6708, at \*5. Moreover, Plaintiff admits in the Complaint that his transaction was closed by a broker-dealer that was "registered and/or licensed under FINRA and state licensing laws . . . ." *Id.* ¶ 47.

### b)     *Ylitalo fails to allege scienter.*

Scienter is a mental state "embracing [an] intent to deceive, manipulate, or defraud, either knowingly or recklessly." *In re Hertz Global Holdings Inc.*, 905 F.3d

106, 114 (3d Cir. 2018) (quoting *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)). Under the PSLRA, Ylitalo's complaint must "state with particularity facts giving rise to a strong inference" of scienter. *Id.* The Supreme Court has made clear that a complaint adequately pleads scienter "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. To plead a "strong inference" of scienter, plaintiffs must allege with particularity either "facts to show that the defendant had both motive and opportunity to commit fraud" or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lord Abbett Inv. Tr. v. Valeant Pharms. Int'l, Inc.*, No. 17-6365, 2018 WL 3637514, at *3 (D.N.J. Jul. 31, 2018). The receipt of professional fees alone is insufficient to establish motive. *Id.* at *3 (citing *Klein v. Antek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005)). To establish conscious misbehavior or recklessness, a plaintiff must allege "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

Other than purely conclusory statements that the ADP Defendants knew or acted recklessly or acted negligently, Ylitalo offers no allegations that support a

24

finding of scienter, let alone particularized allegations demonstrating a "strong inference" of scienter.[14] Courts routinely dismiss complaints for failing to allege a strong inference of scienter when plaintiffs offer only general allegations for motive, such as for compensation-related benefits, for a corporation to appear profitable, or to keep stock prices higher. *See, e.g.*, *Michael*, 2023 U.S. Dist. LEXIS 166645, at *33; *Hertz*, 2017 U.S. Dist. LEXIS 65156 at *68-69 (finding scienter was insufficiently pled where plaintiff alleged that individual defendants earned substantial profits trading on company stock); *Wilson*, 195 F. Supp. 2d at 637-38 (holding that plaintiff did not sufficiently plead scienter because the "two general 'motives'" advanced by plaintiff were too general to "provide the type of heightened, unusual motive necessary to support a strong inference of scienter"). Plaintiff does not offer even those general allegations.

### c)  *Ylitalo has not pled loss causation.*

Plaintiff's securities claims must be dismissed for the independent reason that he has not pled loss causation.[15] "Loss causation 'requires a plaintiff to show that a

---

[14]    To the extent Ylitalo is attempting to plead that either ADP Defendant had scienter because they failed to properly manage the manner their employees' sale of SIMPLE IRAs, such allegations do not establish scienter. The Third Circuit has "long held 'that an allegation of mismanagement on the part of a defendant will not alone support' a securities fraud claim." *Hertz*, 905 F.3d at 117

[15]    Plaintiff's failure to plead loss causation is fatal to his Section 10(b) claim *and* to his New Jersey Securities Law claim. *See, e.g.*, *ISM Connect*, 2018 U.S. Dist. LEXIS 152120, at *31-32.

misrepresentation that affected the integrity of [a security's] market price also caused a subsequent economic loss.'" *In re Anadigics, Inc., Sec. Litig.*, No. 08-5572 (MLC), 2011 U.S. Dist. LEXIS 112587, at *50-51 (D.N.J. Sep. 30, 2011) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011)). "To establish loss causation, a plaintiff 'must allege that the subject of the fraudulent statement was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.'" *In re Intelligroup*, 527 F. Supp. 2d at 297; *see also Anadigics*, 2011 U.S. Dist. LEXIS 112587 at *51. It does not suffice to plead only that "the price of the security was inflated at the time of purchase . . . ." *Anadigics*, 2011 U.S. Dist. LEXIS 112587 at *51.

As set forth above, Ylitalo alleges that the ADP Defendants did not disclose that the SBS Representatives were purportedly unlicensed broker-dealers and that the ADP Defendants purportedly trained and incentivized SBS Representatives to "sell" SIMPLE IRAs over other available options. Dkt. No. 1 ¶¶ 70-73. Also, Plaintiff in a purely conclusory allegation claims that ADP Defendants misrepresented that the projected rate of return was 6% but that he has since earned close to 4%. *See* Dkt. No. 1 ¶¶ 76, 78, 80.

Ylitalo, however, does not allege with the required particularity that any of the purported omissions caused any loss. Nor does Ylitalo offer any facts showing that the projection rates were false when made.

### 3.    Ylitalo's claim under Section 12 of the Securities Act must be dismissed.

To sustain a claim under Section 12(a)(2), Ylitalo "must allege that [he] purchased securities pursuant to a materially false or misleading 'prospectus or oral communication.'" *Sterling*, 2024 U.S. Dist. LEXIS 175459, at *37. In addition to the arguments raised above that there is no actionable misstatement or omission, in *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), the Supreme Court held that "the word 'prospectus' [as used in Section 12(a)(2)] is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Id.* at 571, 584. The Court underscored the importance of the existence of a registration statement as a condition precedent to a Section 12(a)(2) claim and acknowledged that "'oral communication' is restricted to oral communications that relate to a prospectus." *Id.* Plaintiff neither identifies any prospectus nor any oral statements made by any ADP employee regarding a prospectus. Thus, Section 20(a)(2) is not applicable.

### 4.    Ylitalo's control liability claims must be also dismissed.

Ylitalo asserts that Automatic, as ADP's parent company, is liable under the control liability provisions of the securities laws. Under both Section 15 of the

27

Securities Act and Section 20(a) of the Securities Exchange Act, Plaintiff must allege (1) a primary violation, (2) control of the primary violator by the defendants, and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. *See Howard v. Arconic Inc.*, No. 2:17-cv-1057, 2021 U.S. Dist. LEXIS 116935, at *90 (W.D. Pa. June 23, 2021); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013) (recognizing split within Circuit as to whether culpable participation must be specifically pled and affirming district court's opinion holding that plaintiff failed to sufficiently allege its Section 20(a) claim); *Sterling*, 2024 U.S. Dist. LEXIS 175459, at *64 (citing *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 280 (D.N.J. 2007)) ("'[F]or a controlling person to be liable, the person over whom control was exercised must have committed a primary violation of the securities laws'"). "'Culpable participation refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery.'" *Howard*, 2021 U.S. Dist. LEXIS 116935, at *90-91; *Belmont*, 708 F.3d at 485-86. "Examples of [ ] culpable participation include . . . a broker-dealer's 'active participation' in a scheme to induce investors to purchase stock in an insolvent company in which the role of the broker-dealer and its sole shareholder 'was not merely that of a facade for fraud but rather one of a culpable confederate.'" *Belmont*, 708 F.3d at 485 (citations omitted). At the outset, Plaintiff's control liability claims under Section 15 of the Securities

Act and Section 20(a) of the Exchange Act fail because he has not stated a claim under Section 10(b). *Sterling*, 2024 U.S. Dist. LEXIS 175459, at *64; *Houck v. Eos Energy Enters.*, No. 23-cv-04113 (JKS) (MAH), 2024 U.S. Dist. LEXIS 203981, at *1 (D.N.J. Nov. 8, 2024) (dismissing Section 20(a) claim where no primary violation of Section 10(b) was pled).

Besides failing to plead an underlying primary violation, Plaintiff alleges no facts establishing a control liability claim against Automatic other than the fact that Automatic is ADP's parent company. "Allegations that an entity was the parent corporation of a primary violator, standing alone, do not make out a claim of control." *Employees' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d 141, 157 (S.D.N.Y. 2011). Moreover, Ylitalo offers no facts demonstrating that Automatic was a culpable participant in any purported misconduct. *Howard*, 2021 U.S. Dist. LEXIS 116935, at *91 (dismissing Section 20(a) claim where plaintiff failed to plead culpable participation for the same reasons plaintiff failed to plead scienter); *id.* at *94-95 (holding that plaintiff failed to plead culpable participation for purposes of Section 15).

### 5.    Ylitalo's ERISA claim under 29 U.S.C. § 1106 fails.

In addition to failing to allege any injury, Ylitalo's ERISA claim fails because he has not adequately pled that the ADP Defendants are fiduciaries. To state a claim under 29 U.S.C. § 1106, Ylitalo must allege that a fiduciary of an employee benefit

plan caused that plan to engage in a self-dealing transaction. *See Sweda v. Univ. of Penn.*, 923 F.3d 320, 335, 337 (3d. Cir. 2019) (citing 29 U.S.C. § 1106(a)(1) (A), (C), (D)) (dismissing claims asserted under Section 1106(a)(1) where, regarding a purported prohibited transaction, plaintiff failed to plead an "intent to benefit" a party in interest, a transfer of plan property or assets, or that a "party in interest" was involved). In pertinent part, the statute defines a fiduciary as:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . . If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary . . . .

29 U.S.C. § 1002(a)(21)(A) & (B). "This statutory definition requires that a fiduciary 'must be someone acting in the capacity of manager, administrator, or financial advisor to a plan.'" *Santomenno ex. rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014) (affirming order dismissing claim where plaintiff failed to establish that an investment company was a fiduciary under ERISA) (citing *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000)); *Renfro v. Unisys*

*Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) ("[A]n entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan").

Ylitalo alleges that "Defendants had a fiduciary relationship with the investors of SIMPLE IRAs." Dkt. No. 1 ¶ 149. But Plaintiff alleges no facts demonstrating a fiduciary relationship between Plaintiff and any ADP Defendant. For instance, Ylitalo does not allege that the ADP Defendants exercise any discretion with respect to the R4 SIMPLE IRA Plan. Indeed, the R4 Agreement in bold and all capitalized letters states that ADP has no discretion over Plaintiff's R4 SIMPLE IRA Plan account, that ADP is not the administrator or plan administrator as defined under ERISA, "nor is ADP a 'fiduciary' within the meaning of ERISA . . . ." (Guerra Decl. Ex. A at 18). This provision is dispositive. *See, e.g.*, *Santomenno*, 768 F.3d at 294, 299 (recognizing no fiduciary duty where defendant had no discretion with respect to plaintiff's investments, as provided by the parties' agreement). Accordingly, Ylitalo has not sufficiently pled a claim under Section 1106. *See, e.g.*, *id.* at 291.

Finally, it is unclear whether Ylitalo seeks to assert a claim under Section 1106(a), (b), or (c), all three, or a combination. In all events, Plaintiff has alleged no facts plausibly pleading any of these sections. Ylitalo has not alleged that, as between the R4 SIMPLE IRA Plan and a party in interest, there was a sale or exchange of property, that there was a loan, furnishing of goods, services, or facilities, or any employer security or employer real property at issue. 29 U.S.C. § 1106 (a) (1), (2).

31

*See also Young Cho v. Prudential Ins. Co. of Am.*, Civil Action No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397, at *38 (D.N.J. Sep. 27, 2021) (finding no violation of 29 U.S.C. § 1106 (a) (1), (2) where plaintiff conclusorily alleged that investments in defendants' mutual funds "resulted in 'millions of dollars of fees' and 'significant losses' to the Plan and its participants"); *Spear v. Fenkell*, No. 13-02391, 2015 U.S. Dist. LEXIS 76191, at *60 (E.D. Pa. June 12, 2015) (dismissing 29 U.S.C. § 1106 (a) & (b) claims where plaintiff's allegations did not fall within the identified types of prohibited transactions).

Ylitalo also has not pled that a fiduciary dealt with the R4 SIMPLE IRA Plan's assets for its own account or interest, acted in any transaction on behalf of a party with interests adverse to the R4 SIMPLE IRA Plan or Plaintiff or other beneficiaries, or received consideration for his own personal account from any party arising from a transaction involving assets of the R4 SIMPLE IRA Plan. 29 U.S.C. § 1106 (b). *See Spear*, 2015 U.S. Dist. LEXIS 76191, at *60. And Ylitalo has not pled that any real or personal property was transferred by a party in interest. 29 U.S.C. § 1106 (c). Ylitalo has accordingly failed to sufficiently plead this claim.

### 6. Ylitalo's claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, fails.

To plead a FDUTPA claim, Plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Reinkraut v. FCA US Ltd. Liab.*

*Co.*, Civil Action No. 23-02792, 2025 U.S. Dist. LEXIS 124810, at *31 (D.N.J. June 30, 2025) (Semper, J.) (applying Florida law and dismissing claim because the plaintiff failed to plead any deceptive or unfair act or practice or that he suffered actual damages). Because Ylitalo's claims sound in fraud, he must satisfy Rule 9(b). *See, e.g.*, *DiMartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 U.S. Dist. LEXIS 106138, at *18 (D.N.J. Aug. 11, 2016) ("When FDUTPA claims 'sound in fraud,' courts are inclined to apply Rule 9(b)"); *Fellner v. Cameron*, No. 2:10-cv-155, 2012 WL 5387696, at *6 (M.D. Fla. Oct. 5, 2012), *report and recommendation adopted*, No. 2:10-cv-155, 2012 WL 5387981 (M.D. Fla. Nov. 2, 2012) ("most courts in this District have recognized that the heightened pleading standard of Rule 9(b) apply to claims brought under [ ] FDUTPA").

Initially, Plaintiff's FDUPTA claim fails because FDUTPA does not apply to claims arising from securities transactions. *Minshall v. TD Evergreen*, No. 8:05-CV-1232-T-26TGW, 2005 WL 8145046, at *1 (M.D. Fla. Aug. 4, 2005); *Crowell v. Morgan Stanley, Dean Witter Services Co., Inc.*, 87 F. Supp. 29 1287, 1295 (S.D. Fla. 2000).

In addition, Plaintiff has not pled this claim with sufficient particularity. First, as set forth in Section III.A, Ylitalo has not pled an actual loss and, therefore has not alleged damages. *Reinkraut*, 2025 U.S. Dist. LEXIS 124810, at *32 (concluding that plaintiff failed to plead actual damages where he stated that "his insurance paid for

repairs"). Second, as set forth in Section III.B.2.(a), Ylitalo has not alleged an actual misstatement or omission or otherwise deceptive act. Third, Plaintiff has not pled that ADP's purported failure to disclose certain information, e.g., that SBS Representatives had a sales quota for SIMPLE IRAs, sold SIMPLE IRAs despite being unlicensed, were incentivized to sell SIMPLE IRAs and pushed to sell SIMPLE IRAs over all other plans, caused any loss. Indeed, Ylitalo has not even alleged that a SIMPLE IRA plan was not the best retirement plan for R4 or him.

### 7. Ylitalo has not sufficiently pled a negligent misrepresentation/gross negligence claim.

To state a negligent misrepresentation claim under New Jersey law[16], Ylitalo must allege with sufficient specificity "that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied.'" *Stratis v. BMW of N. Am., LLC*, No. 2:22-cv-06929 (BRM) (JRA), 2023 U.S. Dist. LEXIS 72800, at *31 (D.N.J. April 26, 2023); *Moore*, 2019 U.S. Dist. LEXIS 89363, at *20-21 (dismissing negligent misrepresentation claim where plaintiff did not plead reliance). To state a gross negligence claim, Ylitalo must allege: "(1) the existence of a duty owed by Defendants towards Plaintiff; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiff's injuries; and (4) that

---

[16] The ADP Defendants assume New Jersey law applies to this common law claim. Florida law, however, is the same and requires dismissal for the same reasons. *See, e.g.*, *Dimieri v. Medicis Pharms. Corp.*, No. 2:14-cv-176, 2015 WL 1523909, at *4 (M.D. Fla. April 3, 2015).

Plaintiff suffered damages as a result." *Powell v. Seton Hall Univ.*, No. 2:21-cv-13709-WJM-JSA, 2022 U.S. Dist. LEXIS 75590, at *11-12 (D.N.J. Apr. 26, 2022) (recognizing that "under New Jersey law 'gross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission'").

Where, as here, negligent misrepresentation and gross negligence claims sound in fraud, a plaintiff must satisfy the heightened pleading requirements of Rule 9(b). *Stratis*, 2023 U.S. Dist. LEXIS 72800, at *10; *Rana Fin., LLC v. City Nat'l Bank of N.J.*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018). *See also Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d Cir. 2015). Courts routinely dismiss gross negligence and negligent misrepresentation claims that do not satisfy Rule 9(b). *See, e.g.*, *Rana*, 347 F. Supp. 3d at 1155 (dismissing gross negligence claim for failure to satisfy Rule 9(b)); *Inventory Recovery Corp. v. Gabriel*, 2012 U.S. Dist. LEXIS 100908, at *15 (D.N.J. July 20, 2012) (dismissing negligent misrepresentation claim where complaint fell "far short" of Rule 9(b) requirements); *Livingston v. Trane Inc.*, 2019 U.S. Dist. LEXIS 15497, at *10 (D.N.J. Jan. 31, 2019).

Ylitalo's Complaint is replete with allegations of purported fraud (*see, e.g.*, Dkt. No. 1 ¶¶ 64, 70-84), and he thus must satisfy Rule 9(b) requirements. *See*

*Stratis*, 2023 U.S. Dist. LEXIS 72800, at *10; *Rana*, 347 F. Supp. 3d at 1155. Ylitalo has not done so.

Plaintiff alleges that the ADP Defendants "misrepresent[ed]" "***potential*** return[s]" on the investments within the SIMPLE IRAs and relied on "inaccurate" estimated rates of return. Dkt. No. 1 ¶¶ 139, 158 (emphasis added). Ylitalo never specifies the purported inaccuracy; instead, he alleges only that the potential rate of return was purportedly projected "'based on unreliable and unlikely return rates,'" *id.* ¶ 64, without alleging what made the return rates purportedly "unreliable and unlikely." Ylitalo alleges that he was damaged due to the ADP Defendants' purported omissions, e.g., that SIMPLE IRA plans were sold by unlicensed SBS Representatives who were required to meet sales quotas and were incentivized to sell SIMPLE IRAs, that such incentives were undisclosed, and that SBS Representatives were required and/or encouraged to sell SIMPLE IRAs over all other plans (Dkt. No. 1 ¶ 158). Plaintiff concludes that the ADP Defendants had a duty to disclose these facts but alleges no basis for the purported duty to disclose. And Ylitalo has not and cannot allege he was damaged. *See* Section III.A. Last, while Plaintiff alleges that the ADP Defendants acted with "gross negligence," Dkt. No. 1 ¶ 168, his pleading does not demonstrate how or even if the ADP Defendants failed to exercise "scant care" or acted with "thoughtless disregard" to consequences from their purported breach of its duty. For these reasons, this claim should be dismissed.

### 8. Ylitalo has not pled unjust enrichment under New Jersey law.

To state a claim for unjust enrichment under New Jersey law, Ylitalo must "'show that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Sharma v. Gupta*, No. 20-3446 (MAS) (DEA), 2022 U.S. Dist. LEXIS 60972, at *17 (D.N.J. Mar. 31, 2022); *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 312 (N.D. Ill. 2022) (dismissing unjust enrichment claim under New Jersey law). Where, as here, an unjust enrichment claim sounds in fraud, a plaintiff must satisfy the heightened pleading standards of Rule 9(b). *See, e.g.*, *Conte v. Promethean Inc.*, No. 21-20490 (KM) (JBC), 2023 U.S. Dist. LEXIS 128194, at *20 (D.N.J. July 24, 2023) (dismissing unjust enrichment claim where plaintiff failed to allege with specificity that retention of benefit was unjust); *Travelers*, 620 F. App'x at 85 n.3.

Plaintiff alleges that "Defendants have been enriched at Plaintiff's and Class Members' expense through their investment into the SIMPLE IRAs . . . ." Dkt. No. 1 ¶¶ 173-74. Other than this conclusory allegation, Plaintiff alleges no other purported benefit that the ADP Defendants received and retained.

Further, under New Jersey law, a claim for unjust enrichment "cannot exist when there is an enforceable agreement between parties." *Hatteras Press, Inc. v. Avanti Comput. Sys.*, No. 16-5420 (MLC), 2017 U.S. Dist. LEXIS 101732, at *14 (D.N.J. June 30, 2017) (dismissing unjust enrichment claim where a valid contract

37

governed the parties' relationship). Here, Plaintiff does not argue that the parties' agreement is invalid or unenforceable, and this claim should be dismissed for this separate reason.

## IV.    **CONCLUSION**

For the foregoing reasons, the ADP Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice[17] and enter all other relief that is just and proper.

Dated:  New York, New York                                    Respectfully submitted,
        July 25, 2025

                                                             **VENABLE LLP**

                                                    By:   /s/ Michael A. Guerra
                                                        Michael A. Guerra (No. 089092013)
                                                        Xochitl S. Strohbehn*
                                                        151 West 42nd Street, 49th Floor
                                                        New York, New York 10036
                                                        Tel.: (212) 808-5670
                                                        Fax: (212) 307-5598
                                                        maguerra@venable.com

---

[17]    Dismissal with prejudice is justified here. Plaintiff was put on notice of the numerous deficiencies in the nearly identical complaint filed in federal court in Florida (*see generally* Guerra Decl. Ex. B) when Automatic and American Century Investment Services moved to dismiss that complaint. Although he was notified of these deficiencies, Plaintiff did not address them in the Complaint filed in *this* action—almost certainly because he cannot and allowing him a third bite at the apple would be futile. Also, because the PSLRA applies here, a Rule 11 review is mandatory upon final adjudication and mandates sanctions where, as here, a plaintiff does not meet the Rule 11 standards. *See Scott v. Vantage Corp.*, 64 F.4th 462 (3d Cir. 2023) (affirming Rule 11 violation and vacating denial of sanctions to securities plaintiffs because "PSLRA's text requires that some sanction be imposed where, as here, a party violates Rule 11"); *see also* 15 U.S.C. §§ 77z-1(c), 78u-4(c).

Jonathan Perlman*
801 Brickell Ave, Suite 1500
Miami, Florida 33131
Tel.: (305) 349-2323
JEPerlman@venable.com

George Kostolampros*
600 Massachusetts Avenue NW
Washington, DC 20001
Tel.: (202) 344-4426
GKostolampros@venable.com

*Attorneys for Defendants Automatic
Data Processing, Inc. and ADP, Inc.*

\* Admitted *Pro Hac Vice*