# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 24-CV-00055-SPC-NPM

Dale Ylitalo and R4 Construction, LLC
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

Automatic Data Processing, Inc., and
American Century Investments Services,
Inc.

      Defendants.

_____

**DEFENDANT AUTOMATIC DATA PROCESSING, INC.'S MOTION**
**TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND..............................................................4

III.  ARGUMENT .....................................................................................7

  A.   Applicable Legal Standard......................................................7

  B.   The Complaint Is a Shotgun Pleading that Fails to Satisfy Rule
       9(b) and PSLRA's Stringent Pleading Requirements ...........9

  C.   Plaintiffs' Complaint Should Be Dismissed for Lack of Standing....11

  1.   Plaintiffs Lack Article III Standing....................................11

  2.   Plaintiffs Have Not Sufficiently Alleged They Were Damaged. ..........12

  D.   Plaintiffs' Federal Securities Law Claims Must Be Dismissed For
       Numerous Other Reasons...................................................14

  1.   Plaintiffs Did Not Plead a Security....................................14

  2.   Plaintiffs' Claims Under Sections 11 and 12 of the Securities Act
       and Sections 15 and 20 of the Exchange Act Are Fatally Flawed.................16

  E.   Plaintiffs Have Not Pled an ERISA Claim Under 29 U.S.C. §
       1106. ................................................................................18

  F.   Plaintiffs' State Law Claims Should Be Dismissed For Numerous
       Additional Reasons. ..........................................................19

  1.   Plaintiffs' State Securities Law Claims Must Be Dismissed................19

  2.   Plaintiffs' Gross Negligence/Negligent Misrepresentation Claim
       Must Be Dismissed. ..........................................................21

  3.   Plaintiffs' Unjust Enrichment Claim Must Be Dismissed..................22

  4.   Plaintiffs' Claim Under Florida's Deceptive and Unfair Trade
       Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*, Fails. .....................23

IV.     The Complaint Should Be Dismissed Because It Is Brought Against the Wrong Entity. ............................................................................................23

CONCLUSION .................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*ADP, Inc. v. Schwartz,*
19-CA-003479 (Fla. Dist. Ct. App.)........................................................................1

*ADP, LLC v. Schwartz,*
18-CA-005454 (Fla. Dist. Ct. App.)........................................................................1

*Albers v. Commonwealth Cap.*
*Corp.,* No. 6:16-cv-1713-Orl-37DCI, 2017 WL 2779906 (M.D. Fla. June 27,
2017)......................................................................................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................7

*Bamert v. Pulte Home Corp.,*
No. 6:08-CV-2120-ORL-22, 2012 WL 3292397 (M.D. Fla. June 11, 2012)..........18

*Bilal v. Driver,*
251 F.3d 1346 (11th Cir. 2001)................................................................................4

*Bochese v. Town of Ponce Inlet,*
405 F.3d 964 (11th Cir. 2005)................................................................................11

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
116 F.3d 1364 (11th Cir. 1997)................................................................................8

*Byrd v. Mfrs. and Traders Tr. Co.,*
No. 6:18-cv-1809-Orl-22GJK, 2019 WL 13246785 (M.D. Fla. Sept. 19, 2019)....14

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.,*
658 F. App'x 966 (11th Cir. 2016)..........................................................................18

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.,*
945 F.3d 1150 (11th Cir. 2019)................................................................................4

*Curry v. TD Ameritrade, Inc.,*
No. 1:14-CV-1.361-LMM, 2015 WL 11251449 (N.D. Ga. June 29, 2015)............19

*DiMaio v. Democratic Nat'l Comm.,*
520 F.3d 1299 (11th Cir. 2008)..............................................................................12

*Garfield v. NDC Health Corp.,*
466 F.3d 1255 (11th Cir. 2006)..............................................................................11

*Gustafson v. Alloyd Co., Inc.,*
513 U.S. 561 ..........................................................................................................17

*KH Outdoor, LLC v. Fulton Cnty., Ga.*,
    587 F. App'x 608 (11th Cir. 2014) ............................................................ 12

*Lamm v. State Street Bank & Tr.*,
    749 F.3d 938 (11th Cir. 2014) ...................................................... 7, 19, 21

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
    No. 04-60602 CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006), *aff'd sub*
    *nom. Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675 (11th Cir. 2009) ...................... 10

*Lujan v. Def's. of Wildlife*,
    504 U.S. 555 (1992) ............................................................ 12

*Messer v. E.F. Hutton & Co.*,
    833 F.2d 909 (11th Cir. 1987), *amended on reh'g on other grounds,* 847 F.2d
    673 (11th Cir. 1988) ............................................................ 15, 16

*Metz v. United Counties Bancorp*,
    61 F. Supp. 2d 364 (D.N.J. 1999) ............................................................ 13

*Miyahara v. Vitacost.com, Inc.*,
    715 F.3d 1257 (11th Cir. 2013) ............................................................ 17

*Navtech US Surveyors USSA Inc. v. Boat/U.S. Inc.*,
    No. 2:19-CV-184, 2019 WL 4305499 (M.D. Fla. Sept. 11, 2019) ...................... 14, 23

*Rensel v. Centra Tech, Inc.*,
    No. 17-24500-CIV-KING/SIMONTON, 2018 WL 4410110 (S.D. Fla. June
    14, 2018) ............................................................ 13

*Rhodes v. Omega Research, Inc.*,
    38 F.Supp.2d 1353 (S.D. Fla. 1999) ............................................................ 8

*Romano v. John Hancock Life Ins. Co.*,
    No. 19-21147-CIV-Goodman, 2022 WL 1450770 (S.D. Fla. May 9, 2022) ................ 13

*Schwartz v. ADP, Inc. et al.*,
    21-cv-283-SPC-KCD (M.D. Fla.) ............................................................ 1

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ...................................................... 14, 15, 19

*Slack Technologies, Inc. et al. v. Pirani*,
    598 U.S. 759 (2023) ............................................................ 17

*Smith v. Smith*,
    184 F.R.D. 420 (S.D. Fla. 1998) ............................................................ 4

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
607 F.3d 742 (11th Cir. 2010) ............................................................. 14

*United Am. Bank of Nashville v. Gunter*,
620 F.2d 1108 (5th Cir. 1980) .............................................................. 16

*Wagner v. First Horizon Pharm. Corp.*,
464 F.3d 1273 (11th Cir. 2006) ......................................................... 7, 8

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ........................................................ 9, 10

*Zarrella v. Pac. Life Ins. Co.*,
755 F. Supp. 2d 1218 (S.D. Fla. 2010) ................................................. 11

**Statutes**

15 U.S.C. § 77b ......................................................................................... 14

15 U.S.C. § 77k ................................................................................... *passim*

15 U.S.C. § 77l .................................................................................... *passim*

15 U.S.C. § 77z-l(a)(2)(A)(iv) ............................................................. *passim*

29 U.S.C. § 1102(a) ................................................................................. 18

29 U.S.C. § 1106 ................................................................................. 4, 18

Fla. Stat. § 517.12 ............................................................................. *passim*

Fla. Stat.  § 517.311 .......................................................................... *passim*

Fla. Stat.  § 517.201 .......................................................................... *passim*

N.J. Stat. § 49:3-56 ............................................................................. 4, 20

N.J. Stat. § 49:3-52(b) ....................................................................... *passim*

**Court Rules**

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

Fed. R. Civ. P. Rule 11 .............................................................................. 1

Local Rule 1.01(d)(4) ................................................................................. 1

**Other Authorities**

Sen. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ................................................ 13

Defendant Automatic Data Processing, Inc. ("Automatic"), pursuant to Fed.
R. Civ. P. 12(b)(6) and Local Rule 1.01(d)(4), submits this Motion to Dismiss Plaintiffs
Dale Ylitalo's and R4 Construction, LLC's putative Class Action Complaint. DE 1.

## I.   <u>INTRODUCTION</u>

Plaintiffs' allegations should seem familiar to this Court. Indeed, Plaintiffs' local
attorneys made the same accusations three times before, in *Schwartz v. ADP, Inc. et al.*,
21-cv-283-SPC-KCD (M.D. Fla.), *ADP, Inc. v. Schwartz*, 19-CA-003479 (Fla. Dist. Ct.
App.), and *ADP, LLC v. Schwartz*, 18-CA-005454 (Fla. Dist. Ct. App.). In all three
cases, counsel claimed Automatic and affiliated entities retaliated against Schwartz for
objecting to how they sold SIMPLE IRA retirement plans. This Court ruled against
Schwartz and dismissed his claims. Likewise, the state court ruled against Schwartz
and in favor of Automatic and affiliated entities and ordered Schwartz to pay over $1
million in fees.

This Complaint recycles the same previously rejected allegations which counsel
cut and pasted from its prior filings—the only difference is R4 Construction and Ylitalo
became plan sponsors of their own SIMPLE IRA plan and then filed this suit.

Plaintiffs paste and repackage Schwartz's tired allegations into a dozen counts
they claim as their own—for federal and state security law violations and breaches of
Florida common law—all of which are fatally flawed. The only facts R4 and Ylitalo
actually allege on personal knowledge are that they opened ("purchased") a
presumably unfunded "SIMPLE IRA[]." DE 1 ¶ 48. The Complaint does not allege
whether Ylitalo ever directed contributions to his SIMPLE IRA account (R4 as the

Plan Sponsor/employer could not have). Nor does it allege whether Ylitalo ever purchased American Century Investment Services, Inc. ("ACI") mutual funds, what mutual funds were purchased, who may have advised him to make his particular selection(s), or whether the purchase (if made) has been profitable or not in the few months since he signed up. Rather, the remainder of Plaintiffs' 49-page Complaint consists of "putative class" allegations made "on information and belief" based on "counsel's investigation." For numerous reasons, Plaintiffs' repackaged claims must again be dismissed.

First, the Complaint rests on bare legal conclusions sprinkled with generalized facts pled in numerous instances on information and belief—neither satisfies the Fed. R. Civ. P. 9(b) pleading requirements. Further, the Complaint is a classic example of a shotgun pleading. It lumps Defendants' conduct together, including the conduct of non-party "ADP" entities which are not named defendants. Plaintiffs assert that "Defendants" made material misrepresentations and/or omitted material facts in connection with Plaintiffs purchasing a security. They do not identify who made the purported misstatements, when any statements were made, and to whom they were made. They also do not identify what, if any securities were purchased, and when. In numerous instances, Plaintiffs fail even to provide Defendants with notice of which claims are actually asserted. For instance, Plaintiffs assert claims under Sections 11 and 12(a)(2) of the Securities Exchange Act of 1934. DE 1 ¶¶ 66–79. Section 11 of the Exchange Act, however, concerns conduct relating to stock exchanges—Plaintiffs do not allege that Automatic or ACI act as a stock exchange—and there is not even a

Section 12(a)(2) of the Exchange Act. Defendants are left to guess that Plaintiffs meant to assert claims under the *Securities Act of 1933* instead.

Second, Plaintiffs lack standing. To invoke this Court's jurisdiction, a plaintiff must plead an actual injury in fact. Plaintiffs, however, merely allege they "have suffered damages." *See, e.g.*, DE 1 ¶ 49. That is wholly insufficient to invoke this Court's jurisdiction or plead a cognizable injury. Plaintiffs allege no "facts" showing they suffered any loss in connection with their SIMPLE IRA Plan. Lacking any allegation of loss, the Complaint must be dismissed for lack of standing.

Third, Plaintiffs' federal and state securities law claims fail because Plaintiffs have not alleged that they purchased or sold a security. They simply allege that non-party ADP, Inc. "sold" Plaintiffs on opening a SIMPLE IRA. But a SIMPLE IRA is not a security. And a SIMPLE IRA is not transformed into a security just because R4 employees may choose to contribute to R4's SIMPLE IRA and invest their contributions in ACI-sponsored mutual funds. Plaintiffs' securities law claims also suffer from other fundamental defects, including that, for several, there is no private right of action.

At bottom, this latest salvo in Plaintiffs' counsel's war on Automatic is nothing more than another attempt to extract an undeserved litigation award. This abuse of the litigation process, and the fees Automatic must pay to defend itself from it, is

precisely what the PSLRA was intended to prevent. For all the reasons set forth below, the Complaint should be dismissed with prejudice.[1]

## II.        **FACTUAL BACKGROUND.**

Plaintiff R4 Construction, LLC ("R4") and its managing member Plaintiff Dale Ylitalo ("Ylitalo," and with R4, "Plaintiffs") entered into a SIMPLE IRA Plan Administrative Services Agreement and other agreements (collectively the "R4 Agreement") on August 4, 2023, with non-party ADP, Inc. A copy of the R4 Agreement is attached as Exhibit "A" to the Declaration of Xochitl Strohbehn ("Strohbehn Decl.") in support of this Motion.[2] Defendant Automatic is *not* a party to the R4 Agreement.

The Complaint asserts twelve counts against Automatic and ACI, all based upon the same core allegations.[3] Plaintiffs include a footnote stating that "ADP, LLC

---

[1]        The Complaint's frivolity is demonstrated in numerous ways, including in Plaintiffs' assertion of claims under, it appears, completely incorrect statutes that require allegations that plainly do not exist here and their assertion of claims under statutory sections that do not confer a private right of action. Because the Private Securities Litigation Reform Act ("PSLRA") applies in this matter, a Rule 11 review is mandatory upon final adjudication and mandates sanctions where a plaintiff does not meet the Rule 11 standards, as the Complaint does here. *See, e.g.*, *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("A claim is frivolous if it is without arguable merit either in law or fact"). Under the PSLRA, the 21-day safe harbor does not apply. *See, e.g.*, *Smith v. Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998).

[2]        The R4 Agreement consists of a series of agreements between Ylitalo and non-party ADP, Inc. which create the alleged legal duties at issue in this case. This Court may properly consider the contracts Plaintiffs failed to attach to the Complaint because they are referenced and central to their allegations, DE 1 ¶¶ 2- 3, 19-20, 28. *See* *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) (courts "may consider exhibits attached to a motion to dismiss without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed").

[3]        Plaintiffs' assert the following causes of action: Sections 11 and 12(a)(2) of the Exchange Act (Count I); Sections 15(a)(1) of the Exchange Act (Count II); Section 15(c)(1)(A) of the Exchange Act (Count III); Section 20(a) of the Exchange Act (Count IV); ERISA Claim under 29 U.S.C. § 1106 (Count V); New Jersey securities statute N.J.S.A. 49:2-56 and N.J.S.A. 49:3-52(b) (Counts VI and VII); Gross Negligence/Negligent Misrepresentation (Count VIII); Unjust Enrichment (Count IX);

and ADP, Inc." are subsidiaries of Automatic's and then blur these three entities together as "ADP." DE 1 n. 1, ¶ 17. Plaintiffs then allege that "ADP" offers employer-clients human resources management services through its subsidiaries, including administration of payroll, benefits, and employer-sponsored retirement plans. *Id.* ¶ 2.

Plaintiffs "purchased SIMPLE IRAs . . . ," "the funds for which are invested in [Defendant ACI's] mutual funds . . ." *Id.* ¶¶ 3, 24, 48. Plaintiffs further allege that, because ADP's SIMPLE IRA benefit plans typically result in the contracting employer's employees investing in ACI mutual funds, the SIMPLE IRA benefit plan itself, and not just the ACI mutual funds in which employees might invest, should be considered a "securit[y] governed by the Exchange Act." *Id.*

The crux of Plaintiffs' allegations is that "ADP" sold SIMPLE IRA plans through employees in "ADP's" Small Business Services division (SBS) and that "[l]ittle to none of the SBS sales representatives were licensed as broker-dealers or as sales representatives with the Financial Industry Regulatory Authority or their respective states. *Id.* ¶ 23. Plaintiffs allege that Defendants "failed to disclose . . . that their unlicensed and unregistered personnel [were] required to sell a certain number of SIMPLE IRAs or were otherwise provided incentives to sell SIMPLE IRAs . . . ." *Id.* ¶¶ 7, 46, 48. Plaintiffs allege generally that, by Defendants' alleged acts and omissions, Plaintiffs were "induced into purchasing SIMPLE IRAs" and "incurred monetary damages . . ." *Id.* ¶¶ 8–9, 49. Plaintiffs, however, do not identify who they dealt with;

---

Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count X); and Florida securities statutes Fla. Stat. 517.311 and Fla. Stat. 517.12 (Counts XI and XII). DE 1 ¶¶ 66–171.

do not allege whether the "ADP" employees with whom they dealt in opening a SIMPLE IRA agreement were unlicensed SBS sales representatives; or describe the specific discussion(s) they allegedly had.

The R4 Agreement, which is incorporated by reference, sets forth that the underlying SIMPLE IRA is the employer's SIMPLE IRA plan, which the employer (i.e., Plaintiffs) is adopting, and then engaged ADP, through the administrative services agreement, to provide administrative services to the plan. Strohbehn Decl., Ex. A; DE 1 ¶ 1. The Contract also provides that the employer (i.e., Plaintiffs) acknowledges that:

> ADP [INC.] SHALL NOT EXERCISE ANY DISCRETIONARY AUTHORITY OR DISCRETIONARY CONTROL RESPECTING MANAGEMENT OF THE PLAN OR MANAGEMENT OR DISPOSITION OF PLAN ASSETS. . . .

*Id.* at 18 (Section 6 titled "Status of ADP"). In that same provision, Plaintiffs also acknowledge that non-party ADP, Inc. is not a "fiduciary" within the meaning of ERISA. *Id.* Under the terms of the R4 Agreement, non-party ADP, Inc. waived the initial set up fee and all monthly maintenance fees until 2024. *Id.* at 16.

In signing the R4 Agreement, Plaintiffs acknowledged and agreed that they were not induced to "enter into this Agreement by any representation or warranty not set forth in this Agreement." *Id.* at 18. The R4 Agreement also provides that non-party ADP, Inc. did not "render investment, financial or tax

advice" and did not provide any advice at the time of the transaction for a fee

or any compensation. *Id.* at 18.[4]

## III.     ARGUMENT

### A.    Applicable Legal Standard

To survive a 12(b)(6) motion, a complaint must contain sufficient facts,

accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,*

*556 U.S. 662, 678 (2009)* (citing *Bell Atlantic Corp. v. Twombly*, *550 U.S. 544, 570*

*(2007)*). A plaintiff must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts

must disregard "(1) conclusory allegations, bald legal assertions, and formulaic

recitations of the elements of a claim; (2) accept well-pled factual allegations as true;

and (3) view well-pled allegations in the light most favorable to the plaintiff." *Id.*

Where a plaintiff's claims sound in fraud, a plaintiff's claims must also satisfy

Rule 9(b)'s more stringent requirements. *See, e.g.*, *Wagner v. First Horizon Pharm. Corp.,*

*464 F.3d 1273, 1278 (11th Cir. 2006)* ("a § 11 or § 12(a)(2) claim must be pled with

particularity when the facts underlying the misrepresentation at stake in the claim are

said to be part of a fraud claim, as alleged elsewhere in the complaint"); *Space Coast*

*Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, *295 F.R.D. 540, 545 (S.D. Fla.*

*2013)* (applying Rule 9(b) to an unjust enrichment claim sounding in fraud*); Lamm v.*

---

[4]      The R4 Agreement provides that "[i]n the event of any action or proceeding between the parties, . . . as to their obligations and rights under this Agreement, the prevailing party shall be entitled to all costs incurred in connection therewith, including reasonable legal fees." *Id.* at 19.

*State Street Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (noting that "Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims" under Florida law); *Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1360–62 (S.D. Fla. 1999) (§ 11 claims grounded in fraud are subject to the particularity requirements of Rule 9(b)); *see Granat v. Puglisi*, No. 08-CV-05204, 2010 WL 551438, at *3 (D.N.J. Feb. 16, 2010) (citing N.J. Stat. § 49:3-52(b)(1) and applying Rule 9(b) pleading standard). Here, Plaintiffs' claims sound in fraud as Plaintiffs allege that the Defendants made misrepresentations and omissions, knew or should have known that these omissions and concealments were material, and that the conduct was "unfair and deceptive." DE 1 ¶¶ 91, 103, 109, 120, 123-24, 132, 136-137, 151, 157, 160-61, 166. Further, that ADP purportedly "pressures and bribes unlicensed sales associates." *Id.* ¶ 34.

> To satisfy Rule 9(b), a complaint must set forth:
>
> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal citations omitted). "The rule requires this particularity in order to "alert defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior." *Wagner,* 464 F.3d at 1277 (quotations omitted).

## B.   The Complaint Is a Shotgun Pleading that Fails to Satisfy Rule 9(b) and PSLRA's Stringent Pleading Requirements

Courts routinely dismiss "shotgun pleadings" that, like Plaintiff's allegations, are too vague, ambiguous, and obscure to allow the defendants to formulate a proper response. *See, e.g.*, *Ho v. Att'y Gen.*, No. 22-11430, 2023 WL 2473272, at *2 (11th Cir. Mar. 13, 2023)*. A shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015)*.

At the outset, the Complaint alleges violations of Sections 11 and 12(a)(2) of the Securities Exchange Act of 1934. *Id.* ¶¶ 66–79. But Section 11 of the Securities Exchange Act of 1934 concerns trading by members of exchanges—neither Automatic nor ACI qualify. Further, there is no Section 12(a)(2) of the Securities Exchange Act of 1934. Defendants can only guess that Plaintiffs intended to assert claims under Sections 11 and 12(a)(2) of the ***Securities Act of 1933***, which provide for strict liability against a narrow group of potential defendants for misstatements and omissions in a securities registration statement.[5] Plaintiffs' claim for "gross negligence/negligent misrepresentation," DE 1 ¶¶ 128–40, similarly does not provide Defendants with

---

[5]   Similarly, Plaintiffs assert a claim under Fla. Stat. § 517.12, DE 1 ¶¶ 164–71, which consists of twenty-two distinct subsections. The Complaint does not specify which of these subparts apply, leaving Automatic without notice of which subsection it is alleged to have violated.

adequate notice. This claim "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323. Without knowing what is being alleged, Defendants cannot raise affirmative defenses or meaningfully respond.

The Complaint also relies nearly entirely on allegations that "Defendants" did or failed to do certain things without distinguishing either Defendant's conduct. *See, e.g.*, DE 1 ¶¶ 6–7, 9, 26, 67.[6] Failing to allege facts differentiating defendants' conduct does not satisfy even the relatively lax pleading standards of Rule 8(a), let alone the more heightened standards of Rule 9(b) and the PSLRA. *Lane v. Cap. Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006), *aff'd sub nom. Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675 (11th Cir. 2009).

A shotgun pleading is even more problematic where, as here, a plaintiff must satisfy the more demanding pleading standards of Rule 9(b) and the PSLRA. *See, e.g.*, *Durham v. Whitney Info. Network, Inc.*, No. 206-CV-687-UA-DNF, 2008 WL 4936999, at *1-2 (M.D. Fla. Nov. 17, 2008) (finding that a shotgun pleading failed in part because it did not plead with the particularity required by Rule 9(b) or the PSLRA). Under the heightened pleading standards of Rule 9(b), a plaintiff must plead the "who,

---

[6]      For example, Plaintiffs allege that "Defendants failed to properly train and supervise their unlicensed and unregistered personnel in selling securities," "Defendants failed to disclose to consumers," "Defendants intended that the clients rely on the statements or omissions made by the unlicensed and unregister SBS sales representatives," "Defendants failed to inform Plaintiffs and the Class Members of material information regarding the SIMPLE IRAs," "Defendants intentionally used the SBS sales representatives to act as agents for ADP's [sic] broker dealers to sell the SIMPLE IRAs in violation of Fla. Stat. 517.12," and "Defendants intended that Plaintiffs and the Class Members rely on these misstatements, omissions, or concealments." *See, e.g.*, DE 1 ¶¶ 6–7, 44, 98–99, 131, 168.

what, when, where, and how" pertaining to the underlying allegations. *See Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)* (internal citation omitted). Where a plaintiff fails "to identify the time and place" of the alleged misstatements, "who made those statements, and what information [the defendant] had or could have had in its possession to indicate that the statements were false when made," courts routinely dismiss the claims as insufficiently pled under Rule 9(b). *Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010).* Here, along with not even identifying an underlying security either Plaintiff purchased or when he made such purchase, Plaintiffs do not identify who they purchased the security from or where, do not identify the specific misrepresentations made or by whom or when, and, as set forth below, do not identify any loss either suffered from their supposed securities purchase.[7] Accordingly, Plaintiffs' claims must be dismissed for failure to plead their claims with particularity.

### C.  Plaintiffs' Complaint Should Be Dismissed for Lack of Standing.

#### 1.  <u>Plaintiffs Lack Article III Standing.</u>

Standing is a threshold question of justiciability, going to whether or not an alleged claim for relief presents a "case or controversy" over which a federal court may exercise jurisdiction under Article III of the Constitution. *Bochese v. Town of Ponce Inlet,*

---

[7]       Additionally, while Plaintiffs name *Automatic Data Processing, Inc.,* as a Defendant, Plaintiffs reference ADP, LLC (a defunct entity), and ADP, Inc., in footnote one and then refer to all three entities as "ADP" throughout the Complaint and allege "all of its claims against ADP, its subsidiaries and assigns." *See* DE 1 n.1, ¶ 17. It is impossible to determine from Plaintiff's Complaint what acts Defendant Automatic allegedly did, as opposed to what non-parties ADP, LLP or ADP, Inc.—or other unnamed subsidiaries or assigns did.

405 F.3d 964, 974-75 (11th Cir. 2005). A federal court must assure itself, at the outset of the litigation, that a plaintiff has Article III standing. *KH Outdoor, LLC v. Fulton Cnty., Ga.*, 587 F. App'x 608, 610 (11th Cir. 2014). A plaintiff must meet the burden of pleading and proving standing with respect to each claim for relief alleged in a complaint. *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008). Plaintiffs must plead (i) an "injury in fact" (ii) causally connected to the conduct of the defendant and (iii) likely to be redressed by a favorable decision. *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs simply do not allege they suffered damages. They do not allege any diminution in value of any investment—rather, they merely in a conclusory fashion allege that they were "substantial[ly] harmed." *See, e.g.*, DE 1 ¶¶ 115, 127, 140, 152, 163, 171. Such fact-free assertions fail to satisfy Plaintiff's burden to show they have suffered an injury-in-fact to have standing and invoke this Court's jurisdiction.

## 2. Plaintiffs Have Not Sufficiently Alleged They Were Damaged.

Plaintiffs' claims must also be dismissed for failure to plead damages, an essential element of their claims.

Plaintiff must show a cognizable injury under Sections 11 and 12 of the Securities Act (if that is what Plaintiffs have intended in Count I) is that Plaintiffs have suffered a loss. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)("While a plaintiff need not plead damages under § 11, it must satisfy the court that it has suffered a cognizable injury under the statute"); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 675 n.65 (11th Cir. 2010) (recognizing that,

12

although a plaintiff need not plead damages, it must plead cognizable injury); *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV-KING/SIMONTON, 2018 WL 4410110, at *8 (S.D. Fla. June 14, 2018) (dismissing Section 12(a)(2) claim against because plaintiff received monetary value greater than his original investment).

Tellingly, Plaintiffs have not filed a sworn certification required by the PSLRA which requires plaintiffs to identify each of plaintiff's transactions in the securities at issue, and state that plaintiff did not purchase the securities at issue in the complaint at the direction of plaintiff's counsel and has personally reviewed and authorized the filing of the complaint. *See* 15 U.S.C. § 77z-l(a)(2)(A)(iv). Congress mandated the PSLRA certification to enable courts to determine, before the expense of discovery and trial, if a suit is meritorious and the plaintiff has a real stake in the disposition of the claims. *See* Sen. Rep. No. 104-98, at 6-9 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689. Without the required information setting forth the actual securities Plaintiffs purportedly purchased and all of their transactions in those securities, there is no showing of an "injury in fact."

ERISA claims similarly require plaintiffs to plead damages suffered as a consequence of their participation in their employer's benefit plan, which Plaintiffs failed to do. *Romano v. John Hancock Life Ins. Co.*, No. 19-21147-CIV-Goodman, 2022 WL 1450770, at *31 (S.D. Fla. May 9, 2022). Plaintiffs' claim under N.J. Stat. § 49:3-52(b) likewise required Plaintiffs to plead a financial detriment. *See Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 379 (D.N.J. 1999) ("The New Jersey statute envisions damages for securities fraud similar to those available under the federal

securities laws"). So too does the Florida Deceptive and Unfair Trade Practices Act, *see Navtech US Surveyors USSA Inc. v. Boat/U.S. Inc.*, No. 2:19-CV-184, 2019 WL 4305499, at *3 (M.D. Fla. Sept. 11, 2019) and Plaintiffs' common law claims of gross negligence, negligent misrepresentation, and unjust enrichment all require Plaintiffs to allege a financial detriment, which they have not. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (requiring plaintiff to plead injury resulting from purported misrepresentation); *Byrd v. Mfrs. and Traders Tr. Co.*, No. 6:18-cv-1809-Orl-22GJK, 2019 WL 13246785, at *10 (M.D. Fla. Sept. 19, 2019) ("The basis of the remedy of unjust enrichment is to provide restitution where one person has been unjustly enriched at the expense of another").

### D. Plaintiffs' Federal Securities Law Claims Must Be Dismissed For Numerous Other Reasons.

#### 1. <u>Plaintiffs Did Not Plead a Security.</u>

Plaintiffs allege that the SIMPLE IRAs are "securities governed by the Exchange Act," DE 1 ¶ 3, and otherwise vaguely allege that they "purchased" SIMPLE IRAs, *id.* ¶ 1. These purely conclusory allegations do not sufficiently plead that a security is at issue. In fact, a SIMPLE IRA is *not* a security.

At the outset, a SIMPLE IRA is excluded from the enumerated categories of securities set forth in 15 U.S.C. § 77b. Therefore, a SIMPLE IRA only constitutes a security if it is deemed an "investment contract" under the test articulated by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)—which Plaintiffs have not even alleged. Under *Howey*, an investment contract is comprised of: (1) the

14

investment of money, (2) in a common enterprise, (3) with the expectation of profit, (4) to come solely from the efforts of others. *Id.* at 301. The Eleventh Circuit has held that an investment account is not an investment contract (and thus, not a security) under *Howey* where an "investor who pursuant to the contract has the ability to control the profitability of his investment by his own efforts . . . ." *Messer v. E.F. Hutton & Co., 833 F.2d 909, 915–16 (11th Cir. 1987),* *amended on reh'g on other grounds,* 847 F.2d 673 (11th Cir. 1988). That is precisely the situation here.

**First,** Plaintiffs Complaint does not plead an investment of money under *Howey*. An investment of money requires a "commitment of assets in such a manner as to subject oneself to financial loss." *See Alunni v. Dev. Res. Grp., LLC, No. 608CV-1349-ORL-31DAB, 2009 WL 2579319, at *7 (M.D. Fla. Aug. 18, 2009),* *aff'd,* 445 F. App'x 288 (11th Cir. 2011). The allegations in the Complaint do not allege that, by opening a SIMPLE IRA, Plaintiffs "subject[ed] [themselves] to financial loss." *Id.* Rather, Plaintiffs repeatedly allege that they purchased SIMPLE IRAs, "the funds for which are invested in American Century Investments' mutual funds." *See, e.g.*, DE 1 ¶¶ 56, 75, 79, 82. The act of purchasing a SIMPLE IRA is not alleged (nor could it be alleged) to create any risk of loss to Plaintiffs' funds. A SIMPLE IRA is an account holding funds to be invested by the account's owner—the Plaintiffs.

**Second,** Plaintiffs have not pled there was a "common enterprise." The Eleventh Circuit has held that, with respect to a "trading account," similar to the SIMPLE IRA, "[t]he question of whether a trading account satisfies this definition

15

turns on whether the broker has control over the profitability of the account (a 'discretionary' account) or whether the investor himself has control (a 'non-discretionary' account)." *Messer*, 833 F.2d at 915–16. Like *Messer*, Plaintiffs do not allege that Automatic had discretion to trade or choose investments in Plaintiffs' SIMPLE IRA account. Nor could they—the R4 Agreement plainly provides that non-party ADP, Inc. (and, under Plaintiffs' theory, Automatic) lacks discretion. *See* Strohbehn Decl. Ex. A at 18.

**Third,** Plaintiffs do not allege a reasonable expectation of profit from merely opening SIMPLE IRAs. Courts in this Circuit define a reasonable expectation of profit as "the expectation of appreciation in the value of an investment, or a variable rate of return . . ." that is to "be derived from the [efforts of others]." *United Am. Bank of Nashville v. Gunter*, 620 F.2d 1108, 1117 (5th Cir. 1980) (internal quotation marks and citation omitted); *Alunni v. Dev. Res. Grp.*, 445 Fed. Appx. 288, 296 (11th Cir. 2011) (same). Plaintiffs have not alleged that they reasonably expected a profit from Automatic's efforts in connection with the SIMPLE IRAs. Plaintiffs allege only that non-party ADP, Inc's online "SIMPLE Calculator" allowed them to calculate the "projected return on investment offered with a SIMPLE IRA *invested in securities provided by American Century Investments*." DE 1 ¶ 39 (emphasis added).

### 2. Plaintiffs' Claims Under Sections 11 and 12 of the Securities Act and Sections 15 and 20 of the Exchange Act Are Fatally Flawed.

Assuming Plaintiffs are actually asserting a claim under Section 11 of the Securities Act, Section 11 provides for strict liability against a narrow category of

potential defendants arising from a misstatement in a registration statement. Plaintiffs have not identified a registration statement. On its face, then, Section 11 does not apply to the Complaint. *Slack Technologies LLC f/k/a Slack Technologies, Inc. et al. v. Pirani*, 598 U.S. 759, 762 (2023) (holding that a party is liable under Section 11 of the Securities Act *only* where a buyer can trace the shares purchased to a false or misleading registration statement). Further, only "the issuer, the issuer's directors, the underwriters of the offering, and any accountants who prepared or certified the registration statement" are proper defendants of a Section 11 claim. *Miyahara v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). Automatic does not fall within any of these categories and is thus not a proper defendant under Section 11.

Also, assuming Plaintiffs are asserting a claim under Section 12(a)(2) of the Securities Act, Section 12(a)(2) imposes liability for material misrepresentations or omissions in any "prospectus or oral communication" used to solicit the sale of a registered security and reaches anyone who transfers title to the security and who successfully solicits a purchase. *Miyahara*, 715 F.3d at 1265; *Albers v. Commonwealth Cap. Corp.*, No. 6:16-cv-1713-Orl-37DCI, 2017 WL 2779906, at *4 (M.D. Fla. June 27, 2017) (citing 15 U.S.C. § 77l(a)(2)). Plaintiff neither identifies any prospectus nor any oral statements made by any Automatic employee regarding a prospectus. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 567-68, 584 (1995) (acknowledging that "'oral communication' is restricted to oral communications that relate to a prospectus"). Plaintiffs also do not allege that Automatic either transferred title to any security or solicited the purchase of any security, i.e., an ACI mutual fund.

17

Additionally, neither Section 15(a)(1) nor Section 15(c)(1)(A) of the Exchange Act confers a private right of action. *See Bamert v. Pulte Home Corp.*, No. 6:08-CV-2120-ORL-22, 2012 WL 3292397, at *5 (M.D. Fla. June 11, 2012), *report and recommendation adopted,* No. 6:08-CV-2120-ORL-22, 2012 WL 3292875 (M.D. Fla. Aug. 10, 2012) ("there is no private of action under Sections 15(a) or 15(c)(1) of the Securities Exchange Act of 1934").

Finally, Plaintiffs' Section 20(a) control liability claim cannot be sustained without an underlying violation of the Exchange Act, which Plaintiffs have not pled. *Freedman v. magicJack Vocaltec Ltd.*, No. 9:17-CV-80940, 2018 WL 6110996, at *6 (S.D. Fla. Nov. 21, 2018), *aff'd,* 963 F.3d 1125 (11th Cir. 2020). Plaintiffs' only claims under the *Exchange Act* are Section 15 claims for which there is no private right of action.

## E.      Plaintiffs Have Not Pled an ERISA Claim Under 29 U.S.C. § 1106.

To state a claim under 29 U.S.C. § 1106, Plaintiffs must allege that a fiduciary of an employee benefit plan caused that plan to engage in a self-dealing transaction. *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 972 (11th Cir. 2016) (citing 29 U.S.C. § 1106(a)(1)(C), (D)). The statute defines "fiduciary" in relevant part as a party "named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee acting jointly." 29 U.S.C. § 1102(a).

Plaintiffs do not sufficiently plead that Automatic was a fiduciary under ERISA. Plaintiffs purely conclusory allegation that "Defendants had a fiduciary relationship with the investors of SIMPLE IRAs," DE 1 ¶ 102, does not suffice. *See Zenith*, 658 F. App'x at 970. In *Zenith*, the Eleventh Circuit found that an ERISA claim was insufficiently pled where the defendant's actions were purely ministerial and there was no fiduciary relationship. *Id.*

Plaintiffs' Complaint rests on facts that demonstrate there is *no* fiduciary relationship between Plaintiffs and Automatic. Indeed, the R4 Agreement states plainly that Automatic has no discretion over Plaintiffs' SIMPLE IRA accounts (Strohbehn Decl. Ex. A at 18) and, as such, there is no basis for an ERISA claim. *See, e.g.*, *Lamm*, 749 F.3d at 951 (IRA custodian had no fiduciary duty to customer where custody agreement established an arm's length relationship that imposed limited obligations on the parties); *Curry v. TD Ameritrade, Inc.*, No. 1:14-CV-1.361-LMM, 2015 WL 11251449, at *11–13 (N.D. Ga. June 29, 2015) (no fiduciary duty where defendant had no discretion with respect to plaintiff's accounts).

### F.   Plaintiffs' State Law Claims Should Be Dismissed For Numerous Additional Reasons.

#### 1.   Plaintiffs' State Securities Law Claims Must Be Dismissed.

Plaintiffs have not pled a security, and thus their state securities law claims fail. Section III(D)(1); *see, e.g.*, *AMR Realty Co. v. State, Bureau of Sec.*, 149 N.J. Super. 329, 339 (N.J. Sup. Ct. App. Div. 1977) (adopting *Howey* test); *Brown v. Rairigh*, 363 So. 2d 590 (Fla. Dist. Ct. App. 1978) (applying *Howey* test).

19

Further, the New Jersey and Florida securities laws only apply to activities conducted within those states. *See Bramblewood v. C&G Ass*, 619 A.2d 1332, 1337 (N.J. Sup. Ct. 1992) (dismissing claim because defendants' alleged conduct did not occur in New Jersey); N.J. § 49:3-56 (registration requirement to sell securities in New Jersey); *Allen v. Oakbrook Secs. Corp.*, 763 So. 2d 1099, 1100-01 (Fla. Dist. Ct. App. 1999) ("it is undisputed that the securities sales occurred entirely in other states, and because plaintiffs seek only to allege [ ] violations under Chapter 517, Florida Statutes, those claims should have been dismissed . . ."). Plaintiffs' state securities claims fail because they do not allege that any of the purported conduct occurred in either New Jersey or Florida. *See, e.g.*, DE 1 ¶¶ 113, 169 (alleging that "ADP's" employees met with Plaintiffs without stating where).

Moreover, neither N.J. § 49:2-56[8] (Count VI) nor Fla. Stat. § 517.311 confers a private right of action. *See* N.J. § 49:3-56 (l) (stating only that the Chief of New Jersey Bureau of Securities may bring a claim for a violation of § 49:2-56); Fla. Stat. §517.311 (no express right). Accordingly, Plaintiffs' claims under these provisions fail.

Plaintiffs' claim under Fla. Stat. § 517.12 must also be dismissed. The only remedy Plaintiffs can seek for a purported failure to register under this section of the Florida Blue Sky laws—to the extent it even applies—is rescission of any "security" they hold. Plaintiffs do not seek rescission, and this claim must, accordingly, be dismissed. *Scheurenbrand v. Wood Gundy Corp.*, 8 F.3d 1547, 1550 (11th Cir. 1993).

---

[8] While the Complaint refers to N.J. § 49:2-56, no such section exists. Automatic assumes Plaintiffs mean to refer to N.J. § 49:3-56.

Plaintiffs' claim under N.J. Stat. § 49:3-52(b) fares no better. It requires a plaintiff to plead "(1) an untrue material statement or omission; (2) scienter; (3) causation; and (4) injury." *Granat*, 2010 WL 551438, at *3. Plaintiffs must satisfy Rule 9(b) to state a claim under the statute. *Id.* Plaintiffs have not met this standard.

### 2. **Plaintiffs' Gross Negligence/Negligent Misrepresentation Claim Must Be Dismissed.**

To plead gross negligence, Plaintiffs must allege the elements of negligence *and* "(1) circumstances constituting an imminent or clear and present danger amounting to more than normal and usual peril; (2) chargeable knowledge or awareness of the imminent peril spoken of; and (3) an act or omission evincing a conscious disregard of consequences." *See Smith v. Ceres Marine Terminals, Inc.*, No. 6:20-CV-1666-WWB-GJK, 2021 WL 3111614, at *2 (M.D. Fla. Mar. 31, 2021). To state a claim for negligent misrepresentation, a plaintiff must allege:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Dimieri v. Medicis Pharms. Corp.*, No. 2:14-cv-176, 2015 WL 1523909, at *4 (M.D. Fla. April 3, 2015) (internal citations omitted) (Chappell, J.). These claims sound in fraud and Rule 9(b) therefore applies, and as set forth above, the Complaint does not satisfy the pleading standard. *See id.*

Plaintiffs also do not allege that Automatic owed them a duty, even though that is "the first element of a . . . gross negligence claim." *Lamm*, 749 F.3d at 947-48.

21

Nor do Plaintiffs allege that Defendants knew of a "clear and present danger," i.e., danger that "a reasonable, prudent man would know would probably and most likely,' result in an injury to another . . . ." *Glaab v. Caudill*, 236 So. 2d 180, 186 (Fla. Dist. Ct. App. 1970).

### 3.   **Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.**

Under Florida law, no claim for unjust enrichment may lie where a contract covers the subject matter at issue. *See Glob. Network Mgmt., Ltd. v. CenturyLink Latin Am. Sols., LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023). Here, the R4 Agreement governs the parties' relationship and the allegations at issue, and this claim fails. Strohbehn Decl. Ex. A. Among other things, the R4 Agreement precludes recovery for money damages except in instances of fraud (which Plaintiffs have not sufficiently pled), *see id.* at 20, and sets forth non-party ADP, Inc.'s obligations to Plaintiffs and limitations on those obligations, *id.* at 19.

Plaintiffs also never allege how Automatic was unjustly enriched. To sufficiently plead this claim under Rule 9(b), Plaintiffs must allege with specificity that Automatic retained a benefit that, under the circumstances, make its retention inequitable. *Space Coast* 295 F.R.D. at 545 (applying Rule 9(b) to plaintiff's unjust enrichment claim "based on alleged fraudulent representations and omissions" and dismissing the claim). Plaintiffs do not plead anything specifically. Instead, they conclusorily allege that it was inequitable for "Defendants" to "ret[ain] Plaintiffs' and Class Members' funds" that were used to open the SIMPLE IRA accounts. DE 1 ¶ 146. Plaintiffs also do not explain how Automatic inequitably retained Plaintiffs' funds

when non-party ADP, Inc. waived the opening fee and the monthly maintenance fee

until 2024. Strohbehn Decl. Ex. A at 16.

### 4. Plaintiffs' Claim Under Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*, Fails.

Plaintiffs' claim under FDUPTA requires them to allege: "(1) a deceptive act or

unfair practice; (2) causation; and (3) actual damages." *Navtech*, 2019 WL 4305499, at

*3 (citations omitted). Because Plaintiffs' claims sound in fraud, Plaintiffs must satisfy

Rule 9(b). *See, e.g., Fellner v. Cameron*, No. 2:10-cv-155, 2012 WL 5387696, at *6 (M.D.

Fla. Oct. 5, 2012) (Chappell, J.), *report and recommendation adopted*, No. 2:10-cv-155,

2012 WL 5387981 (M.D. Fla. Nov. 2, 2012) ("most courts in this District have

recognized that the heightened pleading standard of Rule 9(b) apply to claims brought

under [ ] FDUTPA"). Plaintiffs have not met Rule 9(b)'s heightened pleading

standard. Further, FDUPTA does not apply to claims arising from securities

transactions. *Minshall v. TD Evergreen*, No. 8:05-CV-1232-T-26TGW, 2005 WL

8145046, at *1 (M.D. Fla. Aug. 4, 2005).

### IV. The Complaint Should Be Dismissed Because It Is Brought Against the Wrong Entity.

The Complaint should be dismissed because Automatic is the wrong defendant.

*See Huber v. GMAC, LLC*, No. 8:10-CV-2458-T-24, 2011 WL 1466278, at *2–3 (M.D.

Fla. Apr. 18, 2011) (dismissing claim where the governing documents appended to the

complaint made clear that the proper defendant was a different entity); *Innocent v. Palm

Beach Cnty. Workforce Dev. Consortium*, No. 21-CV-80623, 2021 WL 7082830, at *3

(S.D. Fla. Oct. 22, 2021) (granting  motion to dismiss because plaintiff's exhibits to

complaint established that named defendant was the wrong entity). The Complaint is brought against Automatic, but alleges conduct undertaken by ADP, Inc. Indeed, the R4 Agreement is entered into between Plaintiffs and *non-party* ADP, Inc.—*not* Automatic. The Complaint should be dismissed on this basis alone. *Huber*, 2011 WL 1466278, at *2.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: March 11, 2024

Respectfully submitted,

**VENABLE LLP**
*Attorneys for Defendant Automatic Data Processing, Inc.*

*/s/ Joseph B. Isenberg*
Joseph B. Isenberg
Florida Bar No. 1018077
JBIsenberg@venable.com
Jonathan E. Perlman
Florida Bar No. 773328
JEPerlman@venable.com
100 SE 2nd Street
Suite 4400
Miami, Florida 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

George Kostolampros
GKostolampros@Venable.com
600 Massachusetts Avenue NW
Washington DC  20001
Tel.: (202) 344-4426
Fax: (202) 344-8300

Xochitl S. Strohbehn

Xochitl.Strohbehn@Venable.com
151 West 42nd Street
49th Floor
New York, New York  10036
Tel.:  (212) 307-5500
Fax:  (212) 307-5598

- AND -

**MCDONALD HOPKINS, LLC**

Christopher B. Hopkins, Esq.
Florida Bar No. 116122
chopkins@mcdonaldhopkins.com
Craig S. Distel, Esq.
Florida Bar No. 105098
cdistel@mcdonaldhopkins.com
Alaina B. Karsten, Esq.
Florida Br No.: 70644
akarsten@mcdonaldhopkins.com
501 S. Flagler Drive, Suite 200
West Palm Beach, FL  33401
Tel: (561) 472-2121
Fax: (561) 472-2122

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of court using CM/ECF.  Copies will be contemporaneously served upon all attorneys of record via the transmission of Notices of Electronic Filing generated by CM/ECF.

By:  */s/ Xochitl S. Strohbehn*