## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dale Ylitalo, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>Automatic Data Processing, Inc., ADP., Inc., and American Century Investment Services, Inc.,<br><br>            Defendants. | Case No.: 2:24-cv-07635-JKS-LDW |

## PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS AUTOMATIC DATA PROCESSING, INC.'S AND ADP, INC.'S MOTION TO DISMISS AND DEFENDANT AMERICAN <u>CENTURY INVESTMENT SERVICES, INC.'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

III.  LEGAL STANDARD.............................................................................7

    A.    Fed. R. Civ. P. 12(b)(1)................................................................7

    B.    Fed. R. Civ. P. 12(b)(6)................................................................8

IV.   ARGUMENT AND AUTHORITY .........................................................9

    A.    Plaintiff Has Plausibly Alleged Standing. ...................................9

    B.    Plaintiff Has Plausibly Alleged His Claims................................12

        1.    Plaintiff Has Plausibly Alleged a Security under *Howey*......................12

            i.    Investment of Money ..........................................................14

            ii.   Common Enterprise.............................................................16

            iii.  Profits Solely from the Efforts of Others ...........................18

        2.    Plaintiff Plausibly States a Section 10(b) Claim and State Securities Law Claims Under Counts I, II, and VII. ...............................................................21

            i.    Plaintiff Alleges Actionable Misstatements and Omissions...............22

            ii.   Plaintiff Plausibly Alleges Scienter. ..................................25

            iii.  Plaintiff Plausibly Alleges Loss Causation. .......................26

        3.    Plaintiff Has Plausibly Alleged Control Liability under Section 20(a) of the Exchange Act. ...............................................................27

        4.    ERISA Claim – 29 U.S.C. § 1106 ........................................29

        5.    Florida Deceptive Trade Practices Act ("FDUTPA")............30

        6.    Negligent Misrepresentation/Gross Negligence Claim .........32

7.    Plaintiff Respectfully Withdraws Count I, Violation of Section 12(a)(2) and Section 12 of the Securities Act. .................................................................34

8.    Plaintiff Respectfully Withdraws Count V, Unjust Enrichment. ...........34

V.    CONCLUSION ................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009)........................................................................8

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544, 555 (2007).................................................................8

*Blunt v. Lower Merion Sch. Dist.*,

    767 F.3d 247 (3d Cir. 2014)............................................................9

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,

    70 F.4th 668 (3d Cir. 2023)...........................................................22

*Curran v. Freshpet, Inc., Civ.*

    No. 16- 2263, 2018 WL 394878 (D.N.J. Jan. 12, 2018).......................8

*Finkelman v. Nat'l Football League*,

    810 F.3d 187 (3d Cir. 2016)............................................................7

*Fitzpatrick v. Gen. Mills, Inc.*,

    635 F.3d 1279 (11th Cir. 2011) .....................................................31

*In re Cendant Corp. Sec. Litig.*,

    190 F.R.D. 331 (D.N.J. 1999)................................................... 32, 33

*In re Horizon Health Services Inc. Data Breach Litig.*,

    846 F.3d 625 (3d Cir. 2017)............................................................9

*In re MobileMedia Sec. Litig.*,

    28 F. Supp. 2d 901 (D.N.J. 1998) ........................................................................28

*In re Suprema Specialties, Inc. Sec. Litig.*,

    438 F.3d 256 (3d Cir. 2006)......................................................................... 27, 28

*In re Wilmington Trust Corp. ERISA Litig.*,

    943 F. Supp. 2d 478 (D. Del. 2013)...............................................................9, 10

*Institutional Inv'rs Grp. v. Avaya, Inc.*,

    564 F.3d 242 (3d Cir. 2009).............................................................................25

*James v. Arms Technology, Inc.*,

    359 N.J. Super 291 (App. Div. 2003) .................................................................9

*Lino v. City Investing Co.*,

    487 F.2d 689 (3d Cir. 1973)...................................................................... 18, 20

*Lord Abbett Inv. Tr. v. Valeant Pharms. Int'l, Inc.*,

    No. 17-6365, 2018 WL 3637514 (D.N.J. Jul. 31, 2018) ....................................26

*Luense v. Konica Minolta Business Solutions U.S.A., Inc.*,

    541 F. Supp. 3d 496 (D.N.J. 2021) ............................................................. 10, 11

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ..........................................................................................8

*NE Revenue Services v. Maps Indeed, Inc.*,

    No. 15-3742, 2017 WL 1363875 (3d Cir. Apr. 12, 2017)...................................20

*Neale v. Volvo Cars of N. Am., LLC,*

    794 F.3d 353 (3d Cir. 2015)...................................................................7

*OFI Asset Management v. Cooper Tire & Rubber,*

    834 F.3d 481 (3d Cir. 2016)..................................................................23

*Phillips v. Cnty. of Allegheny,*

    515 F.3d 224 (3d Cir. 2008)...................................................................8

*Printing-Mart Morristown v. Sharp Electronics Corp.,*

    116 N.J. 739 (1989)...............................................................................8

*Rahman v. Kid Brands, Inc.,*

    736 F.3d 237 (3d Cir. 2013)..................................................................26

*Renfro v. Unisys Corp.,*

    671 F.3d 314 (3d Cir. 2011)..................................................................30

*Resolution Trust Corp. v. del Re Castellett,*

    No. 92-4635(AMW), 1993 WL 719764 (D.N.J. 1993).......................32

*S.E.C. v. Edwards,*

    540 U.S. 389 (2004).............................................................................18

*S.E.C. v. W.J. Howey Co.,*

    328 U.S. 293 (1946)...................................................................... passim

*Shapiro v. UJB Financial Corp.,*

    964 F.2d 272 (3rd Cir. 1992)................................................................33

*Small v. Provident Life and Accident Insur. Co.*,

    No. 98-2934, 1998 WL 848112 (E.D.Pa. 1998) ...................................................33

*Steinhardt Group Inc. v. Citicorp*,

    126 F.3d 144 (3d Cir. 1997) ............................................................ 12, 14, 16, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

    551 U.S. 308 (2007) ...........................................................................................25

*Toll Bros. v. Twp. of Readington*,

    555 F.3d 131 (3d Cir. 2009) ................................................................................9

*U.S. S.E.C. v. Infinity Group Co.*,

    212 F.3d 180 (3d Cir. 2000) ....................................................................... 16, 21

*Washington v. LaSalle Bank Nat. Ass'n*,

    817 F. Supp. 2d 1345 (S.D. Fla. 2011) .............................................................31

*Wiley v. Hughes Capital Corp.*,

    746 F. Supp. 1264 (D.N.J. 1990) ......................................................................22

## Statutes

15 U.S.C. § 78o ...............................................................................................................4

15 U.S.C. § 78t ..............................................................................................................27

15 U.S.C.A. §§ 77b .......................................................................................................10

15 U.S.C.A. §§ 78c .......................................................................................................10

17 C.F.R. § 240.15l-1(a) ..................................................................................... 4, 24, 26

29 U.S.C. § 1002 ........................................................................................30

N.J. Rev. Stat. § 49:3-56 ...........................................................................4

N.J.S.A. § 49:3-49 ...................................................................................10

N.J.S.A. 49:3-71 .....................................................................................22

## Other Authorities

Fed. R. Civ. P. 12(b)(6)..............................................................................8

Historical Performance of the S&P 500 Index, Backtest by CURVO,

    https://curvo.eu/backtest/en/market-index/sp-500?currency=eur (last visited on

    Aug. 12, 2025)......................................................................................10

Sec. & Exch. Comm'n Release Notice, Release No. 5211 (Nov. 30, 1971)...........18

Wright & Miller, *Fed. Pract. and Proc.* Civil 2d § 1297, 615 (1990) ...................33

Lead Plaintiff Dale Ylitalo ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following combined response in opposition to Defendants Automatic Data Processing, Inc.'s ("Automatic") and ADP, Inc.'s ("ADP") (collectively "ADP Defendants") Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 52) ("ADP's Motion to Dismiss") and Defendant American Century Investment Services, Inc.'s ("ACI") (collectively with the ADP Defendants, "Defendants") Motion to Dismiss (ECF No, 54) ("ACI's Motion to Dismiss"). In support thereof, Plaintiff states the following:

## I.    INTRODUCTION

On July 9, 2024, Plaintiff filed his Class Action Complaint against Automatic, ADP, and ACI asserting violations of Sections 12(a)(2) & 15 of the Securities Act, violations of Sections 10(b) and 20(a) of the Exchange Act, and violations of 19 U.S.C. § 1106, gross negligence and negligent misrepresentation, unjust enrichment, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. 501.201, *et seq.*), and violations of N.J.S.A. § 49:3-71.[1] (ECF No. 1). On

---

[1] Defendants attempt to skew the facts at issue here by pointing to Plaintiff's prior complaint filed and subsequently voluntarily dismissed in the Middle District of Florida. (ECF No. 52-1, p. 11). This Court is already aware of this prior action. *See* (ECF No. 46). The prior action has no bearing whether Plaintiff has standing or states a claim in this case. Defendants also point to two other Florida state court cases which did not involve Plaintiff, Plaintiff's counsel, or any other SIMPLE IRA purchaser. (ECF No. 52-1, p. 11). The legal and factual questions presented here have not been previously adjudicated in Defendants' prior suits. Cites to Defendants' prior suits are no more than red herrings and have no bearing on this case.

June 27, 2025, this Court appointed Dale Ylitalo as lead plaintiff, Federman & Sherwood at lead counsel, and Kantrowitz, Goldhamer & Graifman, P.C. as liaison counsel. (ECF No. 50). Defendants subsequently filed respective Motions to Dismiss alleging that Plaintiff lacks standing and fails to state a claim for relief. (ECF Nos. 52, 54). As set forth below, Defendnats' Motions to Dismiss must be denied.

## II.    STATEMENT OF FACTS

This is a class action on behalf of persons who own and operate their own business and purchased or otherwise acquired, during the Class Period, a SIMPLE IRA from ADP, the funds for which were immediately directed for investment into one of ACI's Fund of Funds ("FOF") at the time of sale. (ECF No. 1, ¶ 1). Upon entering into a contract to open a SIMPLE IRA, as a part of that contract, purchasers must select the amount to be "deferred" from each paycheck and the mutual fund the "deferred" amount will automatically be invested in. *Id.* at ¶¶ 35, 38–40, 76, 79; (ECF No. 52-3, p. 7 (filed under seal)). Based on Defendants' policies and procedures, including the use of a "SIMPLE Calculator" that helps Defendants provide financial and misrepresentations to Plaintiff and the Class Members, Defendants heavily encouraged purchasers to select one of ACI's FOFs. *Id.* If the purchaser does not elect a mutual fund, Defendants will automatically invest the funds into ACI's FOFs. (ECF No. 1, ¶ 39). Substantially all of ACI's FOFs' assets are immediately re-invested in other ACI mutual funds. *Id.* at ¶¶ 29, 32. These

mutual funds are allocated among underlying funds that represent major asset classes, including equity securities, fixed-income securities, and short-term investments. *Id.* at ¶ 30. Due to the structure of a SIMPLE IRAs, Plaintiff's and Class Members' SIMPLE IRAs are "securities" subject to Federal and State securities laws. *Id.* at ¶¶ 1, 4–5, 26; *see also* ¶¶ 27–42.

ADP sells SIMPLE IRAs through its Small Business Services sales representatives. *Id.* at ¶¶ 33–37, 47. These sales representatives are not licensed as broker-dealers or as sales representatives under the Financial Industry Regulatory Authority ("FINRA") or their respective states. *Id.* at ¶ 34. Despite this, Defendants trained, required, and paid unlicensed and unregistered individuals to sell securities (the ACI's FOFs in the form of a SIMPLE IRA plan), to Plaintiff and the Class. *Id.* at ¶¶ 42–59, 85. These unlicensed and unregistered sales representatives were required to sell a minimum number of SIMPLE IRAs each month (a "sale" being complete only once the SIMPLE IRA contract was completed, contracting the purchaser to invest in ACI's FOFs). *Id.* at ¶¶ 43, 45–50. The sales representatives also received additional bonuses, prizes, or other incentives for selling a certain number of SIMPLE IRA contracts. *Id.* at ¶¶ 51–58.

Federal and state laws expressly prohibit such conduct. Federal and state statutes further require that anyone engaged in the sale or purchase of a security must be licensed and registered in accordance with the applicable jurisdiction's statutes.

*See, e.g.*, 15 U.S.C. § 78o; N.J. Rev. Stat. § 49:3-56. Pursuant to Securities Act § 15l-1(a)(1),

> A broker, dealer, or a natural person who is an associated person of a broker or dealer, when making a recommendation of any securities transaction or investment strategy involving securities (including account recommendations) to a retail customer, shall act in the best interest of the retail customer at the time the recommendation is made, without placing the financial or other interest of the broker, dealer, or natural person who is an associated person of a broker or dealer making the recommendation ahead of the interest of the retail customer.

17 C.F.R. § 240.15l-1(a)(1). These disclosure requirements direct brokers, dealers, and their associates, to disclose "(A) All material facts relating to the scope and terms of the relationship with the retail customer," and "(B) All material facts relating to conflicts of interest that are associated with the recommendation." *Id.* at § 240.15l-1(a)(2)(i). The law further directs brokers and dealers to:

> (A) Identify and mitigate any conflicts of interest associated with such recommendations that create an incentive for a natural person who is an associated person of a broker or dealer to place the interest of the broker, dealer, or such natural person ahead of the interest of the retail customer;
>
>   . . .
>
> (B) Identify and eliminate any sales contests, sales quotas, bonuses, and non-cash compensation that are based on the sales of specific securities or specific types of securities within a limited period of time.

*Id.* at § 240.15l-1(a)(2)(iii).

Defendants attempt to circumvent these requirements by using unlicensed and unregistered sales representatives to sell ACI's FOFs through SIMPLE IRAs,

bringing in a licensed and registered salesman at the very end of the transaction to rubber stamp the sale by the unlicensed salesperson. (ECF No. 1, ¶¶ 47–52). The sales representatives reach out to potential purchasers, discuss with them the terms of the SIMPLE IRA contract and its default investment in ACI's FOFs, and help the purchaser complete the SIMPLE IRA contract. *Id.* at ¶¶ 35, 47–52. To help the sales representatives further sell purchasers on ACI's FOFs, the ADP Defendants created an online tool known as a "SIMPLE Calculator." *Id.* at ¶¶ 59–64. This tool allowed the unlicensed and unregistered sales representatives to input information specific to the purchaser (such as investment amounts and estimated retirement date) and provide estimated returns for the ACI FOF investments, the standard return represented to be 6.00% or higher. *Id.* at ¶¶ 65–66.

In his Complaint, Plaintiff details his experience purchasing a ACI FOF - SIMPLE IRA investment plan. On or around July 26, 2023, Plaintiff spoke with ADP's unlicensed and unregistered sale representative, Paul Long, regarding ADP's payroll services. *Id.* at ¶ 68. During the conversation, Mr. Long recommended as part of his standard sales pitch that Plaintiff purchase ACI's FOFs through a SIMPLE IRA plan. *Id.* Long emphasized ACI's FOFs return rate, using the SIMPLE Calculator, promising Plaintiff a 6.00% return rate or higher. *Id.* at ¶ 69. At no point was Plaintiff made aware that Mr. Long was not qualified or licensed to provide Plaintiff with financial advice nor provide estimated return rates for the investments

5

– though he was given the tools and opportunity to appear competent to do so. *Id.* at ¶¶ 69–70. Mr. Long also did not disclose that he had minimum SIMPLE IRA sales requirements and was paid incentives for selling Plaintiff a SIMPLE IRA over any other plan. *Id.* at ¶¶ 71–73.

At the time the false representations were made Defendants knew that the estimated return rates were not accurate and knew that the sales representatives were engaging in the sale of securities without a license or registration and with the intent of meeting specific sales quotas and receiving an incentive for the particular sale. *Id.* at ¶¶ 65–67. Defendants knowingly failed to inform Plaintiff and the Class Members of these material facts and continued to allow the unlicensed and unregistered sales representatives to encourage purchasers to invest in SIMPLE IRAs based on inaccurate estimated returns. *Id.* Defendants intentionally positioned the unlicensed and unregistered sales representatives to appear qualified and capable of providing investment advice. *Id.* at ¶¶ 69–75. As a result, Plaintiffs and the Class Members reasonably believed and relied on the false information that the sales representatives provided them and that the ACI FOF - SIMPLE IRA investment plan was in their best interest. *Id.* at ¶ 76.

During the Class Period, due to Defendants' omissions and misrepresentations of material facts, Ylitalo and the Class Members purchased SIMPLE IRAs from ADP, which automatically invested portions of their paychecks into ACI's FOFs. *Id.*

at ¶¶ 87–89, 91. The Complaint sufficiently alleges that throughout the Class Period Defendants intentionally and knowingly misrepresented or otherwise omit material information including that the sales representatives' were not licensed, were not providing honest investment information, were being compensated based on providing false information and their compensation was tied directly to the sale of unsuitable and fraudulently represented investment.. *Id.* at ¶¶ 41–47, 66, 92. Defendants also knew and allowed sales representatives to make materially false omissions and misrepresentations regarding the return rate on these SIMPLE IRAs. *Id.* at ¶¶ 63–64. As stated throughout the Complaint, Ylitalo (and Class Members) would not have purchased the ACI FOF - SIMPLE IRA investment plan had they known of Defendants' misrepresentations and omissions. *Id.*

## III.   LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015)). An injury-in-fact requires a plaintiff to show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1.

## B. Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all the pleadings' allegations as true and draws all reasonable inferences in the favor of the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Curran v. Freshpet, Inc., Civ*. No. 16- 2263, 2018 WL 394878, *3 (D.N.J. Jan. 12, 2018)). A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Printing-Mart Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (1989), the New Jersey Supreme Court set forth the criteria used to test the sufficiency of a pleading:

> [A] reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary. At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are

entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.

*Id.* at 746 (citations omitted throughout). *See also James v. Arms Technology, Inc.*, 359 N.J. Super 291, 305 (App. Div. 2003) (at the pleading stage, the court's "role is to decide whether, indulgently read*,* 'the fundament of a cause of action may be gleaned' from the pleadings").

## IV.    ARGUMENT AND AUTHORITY

### A. Plaintiff Has Plausibly Alleged Standing.

ADP Defendants wrongfully assert that Plaintiff lacks standing to bring this suit because he alleged that he earned a return close to 4.00% and, thus, "has suffered no out-of-pocket loss." (ECF No. 52-1, pp. 10–11 (citing *In re Wilmington Trust Corp. ERISA Litig*., 943 F. Supp. 2d 478, 487–88 (D. Del. 2013)). ADP Defendants' argument over-simplifies and misconstrues federal standing requirements. Establishing an injury-in-fact at the motion to dismiss stage "is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that [a] claimant allege[] some specific, identifiable trifle of injury." *In re Horizon Health Services Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)). The focus is whether the plaintiff suffered harm. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009).

With respect to investments in retirement funds, a plaintiff may establish an injury-in-fact by showing that he was deprived of the opportunity to grow his retirement savings by investing in other funds. *Luense v. Konica Minolta Business Solutions U.S.A., Inc.*, 541 F. Supp. 3d 496, 506–07 (D.N.J. 2021). Here, Plaintiff has alleged a 4.00% rate of return, was far below the promised 6.00% and even further below the S&P 500's standard rate of return.[2] (ECF No. 1, ¶ 78).

This case is further distinguishable from *In re Wilmington Trust Corp*. In *In re Wilmington Trust Corp.*, the District of Delaware, considering ERISA claims, found the plaintiff who sold his stock when the stock was artificially inflated (and, thus, received a profit from the artificial inflation) could not establish a causal connection between his alleged loss and the wrongful conduct. 943 F. Supp. 2d at 488. In this case, Plaintiff is not alleging purchases in artificially inflated stock nor that he sold his stock for a profit. Rather, Plaintiff brings this suit for Defendants' failure to honestly advise him and instead knowingly mislead him on the purchase of the SIMPLE IRA – a security under 15 U.S.C.A. §§ 77b(a)(1), 78c(a)(10) and N.J.S.A. § 49:3-49(m). (ECF No. 1, ¶¶ 79–94).

Most notably, Plaintiff and the Class Members were induced into purchasing the SIMPLE IRAs by unlicensed and unregistered sales representatives with the

---

[2] Historical Performance of the S&P 500 Index, Backtest by CURVO, https://curvo.eu/backtest/en/market-index/sp-500?currency=eur (last visited on Aug. 12, 2025).

promise that those ACI FOF - SIMPLE IRA investment plans would produce an annual rate of return of 6.00% or higher. *Id.* at ¶¶ 64–66, 80. As set forth in Plaintiff's Complaint, they have not. *Id.* at ¶ 78.

ADP Defendants also allege a factual challenge to Plaintiff's Complaint, stating that since purchasing the SIMPLE IRA, Plaintiff received a rate of return of 12.3%. (ECF No. 52-1, p. 10, n. 7 (citing Murphy Decl., ¶ 4 (ECF No. 54-3, ¶ 4))). Margaret Murphy's Declaration, provides no evidence to support her claim that Plaintiff's SIMPLE IRA's rate of return since August 17, 2023 was 12.5%. *See generally* (ECF No. 54-3). Conversely, between January 1, 2024 and December 31, 2024, Plaintiff's allegation is the rate of return was a measly 4.78%. Exhibit 1; (ECF No. 44-1). Plaintiff's rate of return to date changes with every passing day – as is the nature of the stock market. But, unlike the stock market, Plaintiff's standing is not volatile. He has factually alleged (and proven) that he did not receive the 6.00% annual rate of return that the unlicensed and unregistered sale representative promised him upon purchasing the ACI FOF - SIMPLE IRA investment plan. Ex. 1; (ECF No. 1, ¶ 78). Based on the misrepresentations of the 6.00% estimate made by the unlicensed and unregistered sale representative, Plaintiff was induced to purchase a SIMPLE IRA that yielded far below the promised rate of return. These facts are sufficient to establish standing. *Luense*, 541 F. Supp. 3d at 506–07.

**B. Plaintiff Has Plausibly Alleged His Claims.**

**1. Plaintiff Has Plausibly Alleged a Security under *Howey*.**

Congress "enacted a definition of 'security' sufficiently broad to encompass virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). The securities laws were intended to provide investors with accurate information and to protect the investing public from the sale of inferior securities through misrepresentations and omissions. H.R. Rep. No. 85, 73d Cong., 1st Sess., at 1–5 (1933). In defining a "security," the United States Supreme Court in *Howey* found that:

> an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidence by formal certificates or by nominal interests in the physical assets employed in the enterprise.

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). In other words, the three requirements for establishing an investments contract are: (1) an investment of money, (2) in a common enterprise, (3) with profits to come solely from the efforts of others. *Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 151 (3d Cir. 1997).

In *Howey*, the SEC sought to restrain a Florida corporation from offering and selling small tracts of land in a large citrus grove it owned in violation of section 5(a) of the Securities Act of 1933. *Howey*, 328 U.S. at 295–99. The purchasers were offered land sales contracts for small parcels of the grove, along with a service

contract for harvesting and marketing the fruit. *Id.* at 295–96. Although the purchasers were free to contract with other service companies, the superiority of the corporation's service company was stressed. *Id.* at 296. For the most part, the purchasers lacked the knowledge, skill, and equipment necessary for the care and cultivation of citrus trees. *Id.* at 299–300. The purchasers had no desire to occupy the land or develop it themselves; they were attracted solely by the prospects of a return on their investments. *Id.* at 300. The purchasers received an allocable share of the profits based on the amount of shares owned. *Id.* Based on these facts, the Supreme Court concluded that all of the elements of an investment contract had been met. *Id.* at 300.

Here, Plaintiff has plausibly alleged that invested money into ACI's FOFs through his SIMPLE IRA pursuant to the terms of the SIMPLE IRA contract (ECF No. 1, ¶¶ 1, 4, 26, 75–77); that his funds were pooled with other funds to finance the underlying investments of the FOFs (such as equity securities, fixed-income securities, and short-term investments) (*see id.* at ¶¶ 29–32, 76); and Plaintiff's purpose for purchasing the ACI FOF - SIMPLE IRA was to receive on his retirement funds a profit derived solely from the efforts of others (*id.* at ¶¶ 75–76). ADP Defendants attempt to separate the purchase of the SIMPLE IRA with the purchase of the ACI FOFs, but these "two" transactions occurred under one contract which the parties executed at the same time. *See, e.g.*, *id.* at ¶¶ 1, 76. In opening the

13

SIMPLE IRA, Plaintiff entered into a contract to invest a certain amount of funds each pay period into the ACI's FOFs. *Id.* at ¶¶ 75–77. Defendants did not meet their obligations under the contract to Plaintiff. Plaintiff expected to receive a return of 6.00% as promised by Defendants' unlicensed and unregistered sales representative but received far less. As such, Plaintiff has plausibly alleged an investment contract under *Howey*.

### i.    *Investment of Money*

The first prong is perhaps the simplest prong. To establish an investment of money the investor must show that he has undertaken some degree of economic risk. *Steinhardt*, 126 F.3d at 151. Defendant incorrectly argues that Plaintiff did not make an investment because opening a SIMPLE IRA did not subject Plaintiff to a financial loss. (ECF No. 52-1, p. 22). In *Howey*, the United States Supreme Court considered a similar situation where individuals purchased land sale contracts and, along therewith, service contracts for harvesting and marketing the citrus fruit produced on their land. *Howey*, 328 U.S. at 295–96. Upon payment of the full purchase price, the company conveyed the land to the purchaser by warranty deed. *Id.* at 295. The purchasers had the ability to contract with other harvesters or marketers, but the company stressed its ability to harvest and market the fruit. *Id.* The purchasers did not have any intention of using the land for pleasure and were attracted only by the expectation of substantial profits. *Id.* at 296. The Supreme Court determined that the

selling entities were offering something more than fee simple interest in land or an orchard coupled with management services. *Id.* at 299. They were offering an opportunity – to those who lack the knowledge and ability to cultivate, harvest, and market citrus products – to contribute money and share in the profits of a large citrus fruit enterprise. *Id.* at 299–300.

In that same vein, the SIMPLE IRA contract was not merely a contract to hold a SIMPLE IRA, but to obtain a retirement plan invested in ACI's FOFs with a promised return of 6.00%. (ECF No. 1, ¶ 1). Upon opening his SIMPLE IRA, Plaintiff, simultaneously and as a part of the same transaction, at Defendants direction selected an ACI FOF in which to invest his paycheck deferments. *Id.* at ¶¶ 26, 76; (ECF No. 52-3, pp. 7, 24 (filed under seal)). In the SIMPLE IRA contract, the investment options list several ACI FOFs (varying based on retirement date) with an easy, checkable box next to each plan. (ECF No. 52-3, pp. 24 (filed under seal)). Alternatively, purchasers may use the blank lines below to write in their preferred mutual fund and allocation percentage, provided that the purchaser know the proper identifying information for their preferred mutual funds. *Id.* The contract does not contain any information about other available mutual funds. *See id.* Moreover, if a purchaser does not select any ACI FOF or other mutual fund, then, under the terms of the SIMPLE IRA contract, Defendants automatically invest the deferred funds into an ACI FOF. *Id.* at p. 7. Just as in *Howey* – where the purchasers executed a

contract for the sale of land *and* an optional and amendable service contract – opening the SIMPLE IRA and contracting to invest funds into one of ACI's FOFs through the SIMPLE IRA takes place in one singular action. (ECF No. 1, ¶¶ 1, 26–32, 38–39, 76). The purchasers buy the SIMPLE IRAs to invest their retirement funds in ACI's FOFs. *Id.* Therefore, in signing for a SIMPLE IRA, Plaintiff subjected himself to a financial risk.

### ii.    *Common Enterprise*

The Third Circuit has held that the common enterprise requirement is satisfied by "horizontal commonality." *U.S. S.E.C. v. Infinity Group Co.*, 212 F.3d 180, 188 (3d Cir. 2000). "Horizontal commonality" looks at the relationship between the investors, requiring a pooling of investors' contributions and distribution of profits and losses on a pro-rate basis. *Steinhardt*, 126 F.3d at 151.

In *Howey*, the land sales contracts provided for a uniform purchase price per acre or fraction thereof. *Howey*, 328 U.S. at 295. The average holding of each purchaser was 1.33 acres, with some purchasing under one acre. *Id.* The tracts of land were not separately fenced off; the sole indications of division were found in small, inconspicuous landmarks documented only through a plat book record. *Id.* In that case, cultivation of the individual strips of land was not economically feasible due to their small size, and the tracts only gained utility when cultivated and developed together. *Id.* at 300. The individual owners of the land did not have any

right to the specific fruit. *Id.* at 296. Rather, all of the produce was pooled by the servicing companies, and the net profits were distributed amongst the landowners based on their ownership percentage. *Id.* at 296, 300. The Supreme Court found these facts sufficient to establish a common enterprise. *Id.* at 300.

In this case, the SIMPLE IRA creates a reoccurring investment plan that automatically uses the purchaser's deferred funds to purchase some or a portion of ACI's FOFs. (ECF No. 1, ¶ 1). These FOFs are comprised of ACI's mutual funds. *Id.* at ¶¶ 27–32. Like the individual tracts of lands that comprised the cultivation property that generated net profits to be distributed amongst the landowners in *Howey*, Plaintiff's and Class Members' individual investments are pooled together to fund portions of the ACI's FOFs to generate a return for the investors. Plaintiff's funds are pooled with other funds to finance ACI's FOFs to generate a return for Plaintiff and other similar investors. *See id.* Plaintiff's individual investments would not be able to finance these assets on his own and he has no rights to the underlying assets in the FOFs. *See* Ex. 1. Rather, the FOFs are financed by various investors whose funds are pooled together, and the investors receive the net proceeds on the investments, distributed based on their number of shares. *See* (ECF No. 52-3, pp. 7, 24 (filed under seal)). These facts here mirror the facts in *Howey*. Therefore, just as in *Howey*, Plaintiff satisfied this prong.

17

### iii.    *Profits Solely from the Efforts of Others*

The third element of the Howey test "requires that the purchaser be attracted to the investment by the prospect of a profit on the investment rather than a desire to use or consume the item purchased." *Steinhardt*, 126 F.3d at 152. Courts look to whether the investor has meaningfully participated in the management of the common enterprise such that the investor has more than minimal control over the investment's performance. *Id.* To determine who exercised control in generating profits for the investment, courts must consider the transaction as a whole, including the arrangements the parties made for the operation of the investment vehicle. *Id.* at 153.

This is a flexible rather than static principle, one that is capable of adaption to meet countless and variable schemes devised by those who seek the use of money of others on the promise of profits. *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004). The Third Circuit has held that "an investment contract can exist where the investor is required to perform some duties, as long as they are nominal and would have 'little direct effect upon receipt by the participant of the benefits promised by the promoters.'" *Lino v. City Investing Co.*, 487 F.2d 689, 692 (3d Cir. 1973) (quoting Sec. & Exch. Comm'n Release Notice, Release No. 5211 (Nov. 30, 1971)).

ADP Defendants again try to pull apart this singular transaction by arguing that Plaintiff did not expect to receive a profit merely by opening the SIMPLE IRA

account. (ECF No. 52-1, p. 24). But Plaintiffs purpose for opening the SIMPLE IRA account was not just to spend money to have an empty IRA account. Plaintiff purchased the SIMPLE IRA to invest his retirement funds in ACI's FOFs, deriving a profit solely from ACI and the Defendants management of the FOFs. *See* (ECF No. 1, ¶¶ 24–32).

Defendants also improperly argue that Plaintiff cannot expect a profit solely from the efforts of others because he, not "ADP," controls the investments and management of the funds on his account.[3] (ECF No. 52-1, pp. 24–25). Upon creating a SIMPLE IRA, Plaintiff entered a contract to invest in ACI's FOFs every pay period. *See* (ECF No. 1, ¶ 76). At the direction and encouragement of ADP's employee, Paul Long, Plaintiff contracted to automatically invest his funds into one of ACI's FOFs. *Id.* at ¶¶ 75–76. The FOFs are managed by ACI's FINRA licensed personnel for profits, not Plaintiff or the other SIMPLE IRA purchasers. *See id.* at ¶¶ 26–32.

---

[3] ADP Defendants point to language in the SIMPLE IRA contract that states "ADP [INC.]" would not exercise any control over the management of the plan and disposition of assets. (ECF No. 52-1, pp. 24–25). This language is intentionally misleading. Defendants intentionally and knowingly set up the SIMPLE IRAs to invest in ACI's FOFs if no election was made, and Defendants trained the unlicensed and unregistered sales representatives to suggest and encourage investment in the ACI FOFs. (ECF No. 1, ¶¶ 38–47). Although ADP may not be in direct control over ACI's FOFs, Plaintiff has plausibly alleged that the ADP Defendants worked with ACI push investments into ACI's FOFs.

Plaintiff's nominal "control" over his SIMPLE IRA account does not amount to the "significant efforts" required by the Third Circuit to negate the third element of the *Howey* test. Under Third Circuit precedent, an investor does not meet this third element when investment contract requires the investor to make "significant efforts" to achieve a profit. In *Lino*, the Third Circuit found that the franchise license agreements were not investment contracts because they required the licensee to make "significant efforts" such as opening a sales center, staffing it, recruiting and training area distributors, and making best efforts to run the business. *Lino*, 487 F.3d at 693. In *NE Revenue Services v. Maps Indeed, Inc.*, the Third Circuit found that the parties' contract was not an investment contract because the contract required the alleged investor to make "significant efforts" such as marketing the Maps Indeed software and assisting with the setup and maintenance of information for the software. No. 15-3742, 2017 WL 1363875, at *3 (3d Cir. Apr. 12, 2017).

Plaintiff's ability to select a different ACI FOF or different mutual fund is akin to the *Howey* investor's ability to hire different citrus fruit cultivators and marketers. *Howey*, 326 U.S. at 299. In *Howey*, the Supreme Court found that the selling companies stressed their superior ability to cultivate and market the citrus fruits derived from the land. *Id.* at 295. In the instant case, while Plaintiff may choose other investments, Defendants touted their superior investment returns with ACI's FOFs and induced Plaintiff and the Class Members to select the ACI FOFs. (ECF

No. 1, ¶¶ 35, 38–40, 75, 79). The SIMPLE IRA contract makes it easy for purchasers to check a box to select the appropriate ACI FOF for their retirement date or fill in blank lines specifically identifying other mutual funds of their choosing. (ECF No. 52-3, p. 24 (filed under seal)). If a purchaser does not elect a mutual fund at the time of purchasing the SIMPLE IRA, Defendants automatically invest the funds in one of ACI's FOFs. *Id.* at ¶¶ 38–40. The unlicensed and unregistered sales representatives informed purchasers of as much when selling the SIMPLE IRA plans, explaining the "ease" of this investment opportunity. *Id.* at ¶ 40. Just as in *Howey*, Plaintiff's "efforts" were not significant or *even required* to obtain the anticipated profit. Therefore, Plaintiff has reasonably plead an expectation of profits derived from the efforts of others.

*    *    *

Given the totality of circumstances here, the SIMPLE IRAs clearly constitute an investment contract and, therefore, are securities under the Securities Act. *Infinity Group Co.*, 212 F.3d at 191.

### 2. Plaintiff Plausibly States a Section 10(b) Claim and State Securities Law Claims Under Counts I, II, and VII.

To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must allege (1) a misrepresentation or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th

21

668, 679 (3d Cir. 2023). In that same vein, Section 24(a)(1) of the New Jersey

Uniform Securities Act ("NJUSA") states:

> Any person who . . . [o]ffers or sells a security in violation of section 8(b) [N.J.S.A. 49:3-55 (unlawful representations concerning registration)] 9(a) [N.J.S.A. 49:3-56 (broker-dealer, agent or investment advisor; registration requirement)] or 13 of this act [N.J.S.A. 49:3-60 (offer or sale; registration requirement; exemption)] . . . is liable to the person buying the security from him . . . .

*Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264, 1301 (D.N.J. 1990) (quoting

N.J.S.A. 49:3-71(a)(1)) (inserts in original). Liability under section 24(a)(1) exists

for the issuer of securities who should have been licensed and registered but was not.

*See id.* Here, Plaintiff has plausibly alleged that ADP Defendants' unlicensed and

unregistered sales representatives sold to Plaintiffs and the Class Members SIMPLE

IRAs – the funds for which were immediately invested in ACI's FOFs per the terms

of the investment contract – by intentionally misrepresenting the rate of return on

the investment and failing to disclose their minimum sales requirements and

compensation, in violation of Section 10(b) of the Exchange Act and Section

24(a)(1) of the NJUSA.

### i. *Plaintiff Alleges Actionable Misstatements and Omissions.*

<u>6.00% or Higher Rate of Return</u>

Defendants argue that the unlicensed and unregistered sales representatives'

misstatements regarding the future interest rates on the ACI FOFs are not actionable

because they were forward-looking statements. But "a vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projects, estimates or opinions in the [documents] which the plaintiffs challenge." *OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016). At the time the unlicensed and unregistered sales representatives provided Plaintiff and the Class Members with promises of a 6.00% interest rate or higher, these promises were not accompanied by sufficient cautionary statements. *See id.* at ¶¶ 76, 79. The sales representatives did not warn Plaintiff and the Class Members that the given rate was forward-looking nor that there is a meaningful and very real risk that the ACI FOFs will not achieve a 6.00% or higher interest rate. *See id.* Therefore, the sales representatives' misstatements, made possible and allowed by the ADP Defendants' SIMPLE Calculator, are not entitled to the forward-looking safe harbor provisions.

*Sales Representatives' Compensation, Sales Requirements, and Incentives*

Defendants required their sales representatives to sell a minimum number of SIMPLE IRAs each month and incentivized them – through undisclosed bonuses, prizes, trips, and company shoutouts – to sell additional SIMPLE IRA plans in violation of 17 C.F.R. § 240.15l-1(a). (ECF No. 1, ¶¶ 45–50, 57–58, 83). Federal and state laws expressly prohibit such "sales contests, sales quotas, bonuses, and

non-cash compensation that are based on the sales of specific securities or specific types of securities within a limited period of time." 17 C.F.R. § 240.15l-1(a)(2)(iii). Defendants impermissibly attempt to circumvent these restrictions and promote their ACI FOF – SIMPLE IRA investment plan by using unlicensed and unregistered sales representatives. (ECF No. 1, ¶¶ 45–50, 57–58, 83). As a result, Plaintiff and the Class Members were induced into purchasing ACI's FOFs through SIMPLE IRA plans, believing that the investment was in their best interests and the best retirement plan available.

*Sales Representatives Lack of License and Registration*

Defendants intentionally positioned the unlicensed and unregistered sales representatives to appear qualified and capable of providing investment advice. *Id.* at ¶¶ 69–75. Defendants trained the unlicensed and unregistered sales representatives to talk to customers about the ACI FOF – SIMPLE IRA investment plans. *Id.* at ¶¶ 6–7, 41–47, 59. Defendants used talk tracts, videos, and presentations to give the unlicensed and unregistered sales representatives standard talking points and directions how to sell the ACI FOF – SIMPLE IRA investment plans. *Id.* at ¶ 59. Defendants also provided the sales representatives with tools such as the SIMPLE Calculator which allowed the unlicensed and unregistered sales representatives to estimate the purchaser's returns – based on a 6.00% or higher interest rate – by imputing the purchasers' deferment amount, investment years, company matching,

24

and other relevant information. *Id.* at ¶¶ 61–66. As a result, Plaintiffs and the Class Members reasonably believed that the sales representatives provided them with competent financial advice and relied on the sales representatives' misrepresentations and omissions in deciding to invest in the ACI FOF – SIMPLE IRA investment plan. *Id.* at ¶¶ 76.

### ii.    *Plaintiff Plausibly Alleges Scienter.*

A defendant acting with the requisite state of mind is one who consciously or recklessly "embrac[es] [an] intent to deceive, manipulate, or defraud," either knowingly or recklessly. *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). A complaint adequately pleads a strong inference of scienter "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). But a plaintiff does not need to come forward with "smoking-gun" evidence to meet the PSLRA's pleading requirements. *Id.* Rather, in conducting the scienter analysis, courts must analyze the complaint holistically to determine whether its allegations, "taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323.

Moreover, the doctrine of corporate scienter allows a plaintiff bringing a securities fraud action under the Private Securities Litigation Reform Act

("PSLRA") to plead an inference of scienter against a corporate defendant without raising the same inferences required to attribute scienter to an individual defendant. *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013).

Defendants argue that receipt of professional fees alone is insufficient to establish motive. (ECF No. 52-1, p. 33) (citing *Lord Abbett Inv. Tr. v. Valeant Pharms. Int'l, Inc.*, No. 17-6365, 2018 WL 3637514, at *3 (D.N.J. Jul. 31, 2018)). But Defendants' conduct goes beyond merely collecting professional fees. Defendants derive a substantial, continuing benefit from the sale of the SIMPLE IRA, charging purchasers $50.00 per month for the plan. (ECF No. 1, ¶ 95); (ECF No. 52-3, p. 1 (filed under seal)). ACI receives additional fees each time its FOFs are purchased, and each time its FOFs purchase or sell mutual funds. (ECF No. 1, ¶ 96); (ECF No. 52-3 (filed under seal)). Together, Defendants have created a reoccurring money-making scheme, promoting their ACI FOF – SIMPLE IRA investment plans in manners that run a foul of federal and state regulation best interest laws. *See* 17 C.F.R. § 240.15l-1.

### iii.    *Plaintiff Plausibly Alleges Loss Causation.*

Like Defendants' standing argument, Defendants incorrectly allege that Plaintiff cannot allege a "loss" because his investment did not drop in value. (ECF No. 52-1, pp. 34–35). The purpose of opening a SIMPLE IRA was not to receive *some* return on their investment but the 6.00% return or higher that was promised to

26

them. (ECF No. 1, ¶¶ 65–66, 69, 76, 80, 93). Despite Defendants' assertions, Plaintiff's SIMPLE IRA has performed closer to 4.00%. *Id.* at ¶ 78. Plaintiff and Class Members could have chosen alternative investment options that generated a higher rate of return but were induced to invest in the SIMPLE IRA's based on the misrepresentations made by Defendants' representatives of the 6.00% rate of return, thus the loses here stem from the loss of opportunity.

Moreover, Plaintiff's alleged losses do not hinge solely on the deficient rate of return. The sales representatives' compensation, sales requirements, additional incentives, and lack of proper licensing and registrations would have been material in Plaintiff's and the Class Members' decision to purchase SIMPLE IRAs. *Id.* at ¶¶ 86–89. Plaintiff and the Class Members would not have purchased the SIMPLE IRAs had they known that the sales representatives were not licensed or registered brokers and were required and incentivized to get people to purchase SIMPLE IRAs. *Id.* The sales representatives' intentional omissions robbed Plaintiff and the Class Members of the opportunity to make a fully informed decision on their retirement plans. *Id.*

### 3. Plaintiff Has Plausibly Alleged Control Liability under Section 20(a) of the Exchange Act.

"Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006) (citing 15 U.S.C. § 78t(a)). To state a claim

under Section 20(a) of the Exchange Act, the claimant only need show that one person *controlled* another person who or entity that committed a primary violation of the securities laws. *Id.*; *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 940–41 (D.N.J. 1998) (At the pleading stage, a plaintiff establishes a prima facie case for control person liability by pleadings circumstances establishing control.). As stated above, *supra* § IV.b.2, Plaintiff has plausibly alleged that ADP's unlicensed and unregistered sales representatives violated Section 10(b) of the Exchange Act. Defendants had, and exercised, the power to influence and control the sales representatives and encouraged their misrepresentations and omissions.

ADP and ACI trained, required, and incentivized ADP's unlicensed and unregistered sales representatives to sell ACI's FOFs in the form of SIMPLE IRAs. (ECF No. 1, ¶¶ 4–6). ADP trained and required its unlicensed and unregistered sales representatives to reach out to small business owners through various leads brought in by ADP's payroll services and get them to purchase ACI's FOFs in the form of SIMPLE IRAs. *Id.* at ¶¶ 33–35. ACI directly participated in training the unlicensed and unregistered ADP sales representatives to sell ACI's FOFs in the form of SIMPLE IRAs. *Id.* at ¶¶ 42, 59–60, 67. To aid the sales representatives, ADP Defendants created an online tool called a "SIMPLE Calculator" which allows the sales representatives to calculate costs, savings, and projected returns on investing in ACI's FOFs in the form of a SIMPLE IRA. *Id.* at ¶¶ 61–64. As a result, the

unlicensed and unrepresented sales representatives induced Plaintiff and the Class Members into buying ACI's FOFs through the SIMPLE IRAs based on unreliable and unlikely rates of return. *Id.* at ¶¶ 64–66. The 6.00% rate of return was overestimated as evidenced by the actual rate of return of approximately 4.00%, one-third less than what was promised to Plaintiff and Class Members.

Automatic and ACI were in control of ADP and its unlicensed and unregistered sales representatives and culpable participants in the Section 10(b) and Rule 10b-5 violations. Automatic is the parent company of ADP and has direct supervisory power over ADP and its sales representatives. *Id.* at ¶¶ 23, 146. Automatic encouraged the unlicensed and unregistered sales representatives' fraudulent sales. *Id.* at ¶¶ 44, 46. Automatic ratified and allowed ADP's policies and procedures which enabled and required the unlicensed and unregistered sales representatives to sell ACI's FOFs in the form of SIMPLE IRAs based on affirmative misrepresentations and omissions. *Id.* at ¶¶ 45–58. Automatic further participated by helping to create and make available the online SIMPLE Calculator. *Id.* at ¶ 61.

### 4. ERISA Claim – 29 U.S.C. § 1106

ADP Defendants allege that they are not fiduciaries and therefore cannot be held liable under 29 U.S.C. § 1106.

ERISA provides that

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, we must ask whether [the entity] is a fiduciary with respect to the particular activity in question." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (internal quotation and citations omitted).

Here, ACI possessed authority and discretionary control over its FOFs and their underlying investments. (ECF No. 1, ¶¶ 28–32). The ADP Defendants worked with ACI to sell ACI's FOFs through the SIMPLE IRAs. Defendants' control and authority over the assets that were funded by Plaintiff's and Class Members' investments created a special relationship between Defendants and their investors sufficient to establish a duty upon Defendants' activities. As such, Plaintiff has established a fiduciary duty.

### 5. Florida Deceptive Trade Practices Act ("FDUTPA")

Defendants claim that Plaintiff's FDUTPA claims must fail because FDUTPA does not apply to securities transactions. (ECF No. 52-1, p. 42). In doing so,

Defendants acknowledge that the SIMPLE IRA is a security. Plaintiff pleads this cause of action as an alternative to his securities claims.

To state a claim under the Florida Deceptive Trade Practices Act ("FDUTPA"), the claimant must plausibly allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011). "Under FDUTPA, a deceptive practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*

As detailed above, Defendants engaged in deceptive acts, misrepresenting to Plaintiff and the Class Members the likely rate of return on their ACI FOF investments and intentionally withholding information regarding the sales representatives compensation, sales requirements, incentives, and lack of license and registration. *Supra* § IV.B.2.i. Plaintiff and the Class Members would not have purchased the SIMPLE IRAs had they known of the misrepresentations and omissions. *Supra* § IV.B.1.ii. Even so, to prove the causation element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011). Based on these misrepresentations and omissions, Plaintiff and the Class

Members purchased ACI FOFs through their SIMPLE IRA accounts (without knowing the unlicensed and unregistered sales representatives' sales requirements and incentives), gaining returns of only 4.00% rather than the promised 6.00% and industry standard 10.00%. (ECF No. 1, ¶¶ 65, 78, 80).

### 6. Negligent Misrepresentation/Gross Negligence Claim

Defendants move to dismiss Plaintiff's negligent misrepresentation claim on the ground that it is subject to Rule 9(b) because the claim sounds in fraud. (ECF No. 52-1, pp. 43–44). However, Plaintiff's clear language of this count belies the Defendants' argument. Although this claim incorporates the general factual allegations that seek to establish fraud, Plaintiff's reference to Defendants "*negligently* or recklessly" making material omissions or concealments denotes that Plaintiff has no intention to assimilate his cause of action for negligent misrepresentation into a claim for fraud. (ECF No. 1, ¶¶ 67, 117, 121, 154, 158); *See Resolution Trust Corp. v. del Re Castellett,* No. 92-4635(AMW), 1993 WL 719764, at *2 (D.N.J. 1993) (refusing to apply Rule 9(b) to a claim grounded in negligence though the events underlying a parallel fraud count were identical, because "plaintiff is entitled to proceed on alternate grounds of liability").

In *In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 337 (D.N.J. 1999), this Court held that Rule 9(b) procedural requirement did not apply to claim of negligent misrepresentation, pointing out that the Eastern District of Pennsylvania was faced

with a similar argument but concluded that "[b]ecause a claim of misrepresentation is distinct from a claim of fraud [under state law], Rule 9(b) does not apply to the former according to its terms." *Id.* (quoting *Small v. Provident Life and Accident Insur. Co.*, No. 98-2934, 1998 WL 848112, at * 3 (E.D.Pa. 1998)) (citation omitted). "By its terms, the particularity requirement in Rule 9(b) applies only to averments of fraud. Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses." *Id.* (quoting Wright & Miller, *Fed. Pract. and Proc.* Civil 2d § 1297, 615 (1990)).

The authorities asserted by Defendants to support the proposition that Rule 9(b) applies to a claim of negligent misrepresentation which sounds in fraud are inapposite. (ECF No. 52-1, p. 35). Those cases did not invoke a negligent misrepresentation claim under § 10 of the Securities Act of 1933 like the present case. However, the Third Circuit, in *Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3rd Cir. 1992), held that Rule 9(b) applies to claims under §§ 11 and 12(2) of the Securities Act of 1933 where there is "not a hint in the [plaintiffs'] allegations that defendants were negligent."

Here, Plaintiffs assert a claim for negligent misrepresentation separate from fraud. *See* (ECF No. 1, ¶¶ 128–40). In doing so, Plaintiff clearly and plausibly alleges that the misrepresentations and omissions were negligently made at a time

from the date of filing to three years prior (*when*), by ADP Small Business Servies ("SBS") sales representatives (*who*), and failed to disclose to Plaintiffs SBS sales representatives' commissions, quotas, and requirements for selling SIMPLE IRA's, failed to disclose their unlicensed and unregistered sales status, and misrepresented the potential return on the SIMPLE IRA's (*what*). Moreover, Plaintiff gives a specific example of his experience with Defendants and Paul Long. *Id.* at ¶¶ 70–76. Thus, Plaintiff has sufficiently pled the elements of negligence which are separate from fraud.

### 7. Plaintiff Respectfully Withdraws Count I, Violation of Section 12(a)(2) and Section 12 of the Securities Act.

Plaintiff respectfully withdraws Count I, violation of Section 12(a)(2) (15 U.S.C. § 77l(a)(2)) and Section 15 (15 U.S.C. § 77o(a)) of the Securities Act.

### 8. Plaintiff Respectfully Withdraws Count V, Unjust Enrichment.

Plaintiff respectfully withdraws his claim for unjust enrichment.

## V.    CONCLUSION

As set forth above, Defendants have not shown beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. This Court must deny Defendants' Motion to Dismiss in its entirety.

Dated: September 8, 2025

Respectfully submitted,

Gary S. Graifman, Esq.

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
Tel: 201-391-7000
Fax: 201-307-1086
ggraifman@kgglaw.com

*Attorney for Plaintiff and Interim Liaison Counsel*

William B. Federman*
Jessica A. Wilkes*
*Pro Hac Vice Forthcoming*
**Federman & Sherwood**
10205 N. Pennsylvania Ave
Oklahoma City, OK 73120
Telephone: (405) 235-1560
E: wbf@federmanlaw.com
E: jaw@federmanlaw.com

*Attorneys for the Plaintiff and Interim Lead Class Counsel*

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2025, a true and correct copy of the above

document was served via ECF filing on all counsel of record.

<u>*/s/ Gary S. Graifman*</u>
Gary S. Graifman
