<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DALE YLITALO, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiff,* <br><br> v. <br><br> AUTOMATIC DATA PROCESSING, INC., ADP, INC., and AMERICAN CENTURY INVESTMENTS SERVICES, INC. <br><br> *Defendants.* | Case No. 2:24-cv-07635-JKS-LDW <br><br> **OPINION** <br><br> March 10, 2026 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants Automatic Data Processing, Inc. ("Automatic") and ADP, Inc.'s ("ADP") motion to dismiss the Complaint (ECF 1, "Compl.") (ECF 52) and Defendant American Century Investment Services, Inc.'s ("ACI") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) (ECF 54). Plaintiff filed an opposition. (ECF 57.) Defendants filed replies. (ECF 60; ECF 61.) The Court reviewed all submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motions to dismiss are **GRANTED**.

I.      <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>[1]

This is a putative federal securities class action brought by Plaintiff Dale Ylitalo on behalf

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

of all those who own and operate their own business who purchased or otherwise acquired for themselves a SIMPLE IRA from Defendant ADP from July 9, 2024 to three years prior (the "Class Period"), the funds for which were directed into one of ACI's One Choice Target Date Portfolios at the time of sale of the SIMPLE IRA (the "Class"). (ECF 1, Compl. ¶ 1.)

Defendants Automatic and ADP, a subsidiary of Automatic, provide human resources management software and services. (*Id.* ¶¶ 2-3.) ADP also sells retirement plans, including SIMPLE IRAs. (*Id.* ¶ 4.) Plaintiff alleges that the funds for the SIMPLE IRAs that ADP sells are invested in ACI's "One Choice Target Date Portfolios," which are "Funds of Funds" comprised exclusively of ACI owned and managed mutual funds (*Id.* ¶¶ 4-5, 28-32, 34; *see also id.* ¶ 1.) These ACI "owned and managed mutual funds" are selected and sold at the time of sale of the SIMPLE IRAs through "unlicensed and unregistered" ADP employees. (*Id.* ¶¶ 4-5.) Plaintiff alleges that "[a]lthough a purchaser may select other mutual funds or securities for their SIMPLE IRA, ADP and ACI intends [sic] to sell these SIMPLE IRAs as contract to invest in ACI's One Choice FOF." (*Id.* ¶¶ 38, 42.) If a purchaser does not elect a specific mutual fund or security, the funds for the SIMPLE IRA are invested in one of ACI's One Choice FOFs. (*Id.* ¶ 39.) Plaintiff alleges that the SIMPLE IRAs are "securities governed by the Exchange Act." (*Id.* ¶ 4.)

Plaintiff, a citizen of Naples, Florida, owns and operates a business, R4 Construction, LLC ("R4"). (*Id.* ¶ 18.) Plaintiff purchased a SIMPLE IRA plan following a July 26, 2023 conversation with an allegedly unlicensed and unregistered sales representative (the "Sales Representative"). (*Id.* ¶¶ 68, 76; *id.* Ex. 1.) Plaintiff's Sales Representative did not inform Plaintiff that he was not registered or licensed to sell securities or that he could or would receive additional compensation, bonuses, or other benefits from selling SIMPLE IRA plans. (*Id.* ¶¶ 70-71.) Plaintiff's Sales Representative also failed to inform Plaintiff that ADP offered other retirement plans that Plaintiff

2

could choose from and encouraged Plaintiff to invest his SIMPLE IRA into one of ACI's One Choice FOFs. (*Id.* ¶¶ 73, 75.)

Plaintiff alleges that other Sales Representatives—unlicensed and unregistered ADP employees—sold SIMPLE IRAs to Class Members, and that Automatic and ACI "knew of and encouraged" the use of unlicensed and unregistered personnel to sell the SIMPLE IRA plans. (*Id.* ¶¶ 5-6.) Plaintiff further alleges that the unlicensed and unregistered Sales Representatives were required to sell a certain number of SIMPLE IRAs and received incentives to sell the SIMPLE IRAs, information that ADP and ACI failed to disclose to consumers. (*Id.* ¶¶ 10, 48-50, 54.) ADP and Automatic also allegedly encouraged the Sales Representatives to sell SIMPLE IRAs through training, reviews, and bribes. (*Id.* ¶¶ 45-47, 53-59.)

Plaintiff also alleges that the unlicensed and unregistered Sales Representatives misled Plaintiff and Class Members as to their projected potential returns on their SIMPLE IRAs. (*Id.* ¶ 86.) Sales Representatives allegedly use an online tool created by ADP/Automatic called the "SIMPLE Calculator…in order to calculate the cost, savings, and projected return on investment offered with a SIMPLE IRA, invested in securities provided by American Century Investments." (*Id.* ¶ 61.) By using this calculator, the Sales Representatives allegedly give customers estimated returns "based on unreliable and unlikely return rates." (*Id.*) Plaintiff's and Class Members' Sales Representatives "sell Plaintiff and the Class Members on the SIMPLE IRAs by estimating their returns at 6.00%, or higher." (*Id.* ¶ 65; *see also id.* ¶ 80.) However, according to Plaintiff, "[a]s Defendants know, this estimate far exceeds the actual returns Plaintiff and the Class Members see on their SIMPLE IRAs." (*Id.* ¶ 65.) The Sales Representatives also allegedly informed purchasers, including Plaintiff, that they do not have to make elections for their SIMPLE IRA investments and that the election is already made for them. (*Id.* ¶ 40.)

Plaintiff and ADP entered into a SIMPLE IRA Plan Administrative Services Agreement and other agreements (collectively the "R4 Agreements") on August 4, 2023.[2] (ECF 52-2, Declaration of Michael A. Guerra ("Guerra Decl.") Ex. A.) Under the terms of the R4 Agreements, ADP waived the initial set up fee and all monthly maintenance fees until 2024. (*Id.* at 2, 17.) In the Administrative Services Agreement in the R4 Agreements, R4 agreed that it was not induced to "enter into this Agreement by any representation or warranty not set forth in this Agreement." (*Id.* at 19-20.) The Notice of Automatic Enrollment in the R4 Agreements also states that "[t]here is no guarantee a fund will accomplish its objectives and the investments can lose money." (*Id.* at 7.)

Plaintiff invested over $2,000 in his SIMPLE IRA plan, yet his SIMPLE IRA has allegedly performed "well under 6.00% each year," and instead he has earned closer to 4%. (*Id.* ¶¶ 77-78.) Plaintiff alleges that Defendants knew, encouraged, and trained the Sales Representatives to make misrepresentations and concealments in order to sell the SIMPLE IRA plans. (*Id.* ¶¶ 83-85, 90-91.) As a result, Plaintiff and Class Members were misled about their decision to invest in the SIMPLE IRA plans and would not have purchased the plans if they had known of the material misrepresentations, omissions, and/or concealments. (*Id.* 86-88, 94.)

On July 9, 2024, Plaintiff Dale Ylitalo filed the Complaint individually and on behalf of all others similarly situated. (ECF 1.) The Complaint asserts seven causes of action by Plaintiff on behalf of the Class: violation of Section 12(a)(2), 15 U.S.C. § 77(a)(2) and Section 15, 15 U.S.C. § 77o(a) of the Securities Act (Count 1); violation of Sections 10(b), 15 U.S.C. § 78j(b), and 20(a),

---

[2] In general, "when ruling on a motion to dismiss, a court may not consider matters outside the pleadings." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291-92 (D.N.J. 2009). However, a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). The Court considers the R4 Agreements because they are integral to the Complaint.

15 U.S.C. § 78t(a), of the Exchange Act (Count 2); violation of 29 U.S.C. § 1106 (Count 3); gross negligence/negligent misrepresentation (Count 4); unjust enrichment (Count 5); violation of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA), Fla. Stat. 501.201, *et seq.* (Count 6); and violation of N.J.S.A § 49:3-71 (Count 7).

Ylitalo filed the Complaint on July 9, 2024. (ECF 1.) On September 17, 2024, Ylitalo filed a motion to appoint lead plaintiff and approval of counsel. (ECF 31.) On June 27, 2025, the Court granted Ylitalo's motion and appointed Ylitalo as lead plaintiff. (ECF 49; ECF 50.) On July 25, 2025, Defendants Automatic Data Processing, Inc. and ADP, Inc. moved to dismiss Ylitalo's Complaint. (ECF 52, "ADP Motion.") On the same day, ACI moved to dismiss the Complaint. (ECF 54, "ACI Motion.") On September 8, 2025, Ylitalo filed a combined opposition to ADP's Motion and ACI's Motion. (ECF 57, "Opp.") On October 7, 2025, Defendants filed reply briefs in further support of their Motions. (ECF 60, "ACI Reply"; ECF 61, "ADP Reply.")

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Mazo v. Way*, 551 F. Supp. 3d 478, 489-90 (D.N.J. 2021) (citing *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017)).

A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law…or because some other jurisdictional defect is

present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* at 358 (quotation omitted). A factual attack "concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. <u>Rule 12(b)(6)</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## C. <u>Heightened Pleading Standard</u>

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides heightened pleading rules that a plaintiff must satisfy in securities class actions. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). "The PSLRA replaced [Federal Rule of Civil Procedure 9(b)] as the applicable pleading standard in private securities class actions . . . . Nonetheless, 'Rule 9(b)'s particularity requirement is comparable to and effectively subsumed by the requirements of [15 U.S.C. § 78u–4(b)(1) of] the PSLRA.'" *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 n.3 (3d Cir. 2013) (alteration in original) (quoting *Avaya*, 564 F.3d at 253).

To properly allege that a defendant made a false or misleading statement under the heightened pleading standard of the PSLRA, a private securities complaint "must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading'…; and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (alteration in original) (quoting 15 U.S.C. §§ 78u-4(b)(1), (b)(2)). Therefore,

7

the PSLRA "requires that a complaint state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Rahman*, 736 F.3d at 241–42 (citation and internal quotation marks omitted).

"To plead falsity, Rule 9(b) and the PSLRA each demand specificity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023). "Although the pleading standards in Rule 9(b) and the PSLRA can be generally reconciled harmoniously for allegations of falsity, the PSLRA's requirements for allegations of scienter control over the more lenient standard in Rule 9(b) for mental-state allegations." *Id.* at 681 n.1 (emphasis in original) (citing *Avaya*, 564 F.3d at 253 ("The PSLRA's requirement for pleading scienter…marks a sharp break with Rule 9(b)."); *Tellabs*, 551 U.S. at 323–24).

## III.    DISCUSSION

Defendants first argue that Ylitalo, who allegedly earned a return close to 4%, did not suffer an "actual net monetary loss," and therefore cannot establish an "injury in fact" as required for Article III standing. (ECF 52-1, "ADP Br.," at 10; ECF 54-1, "ACI Br.," at 2-4.) The Court agrees.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The standing inquiry…focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Article III standing "consists of three elements." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

8

be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As to injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury is one that affects the plaintiff "in a personal and individual way." *Id.* (citations omitted). In addition to showing particularization, an injury-in-fact must also be concrete. *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340. The Supreme Court held in *TransUnion LLC v. Ramirez* that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (quoting *Spokeo*, 578 U.S. at 340-41).

Plaintiff has not alleged a concrete injury. First, Plaintiff has not alleged monetary harm. As to the return on his $2,000 investment, Plaintiff alleges only that the Sales Representatives provided "*estimate* returns" on the SIMPLE IRAs (Compl. ¶ 35; *see also id.* ¶¶ 63, 66), and that Plaintiff's Sales Representative told Plaintiff that his "*estimated* return on the SIMPLE IRA would be 6.00%." (*Id.* ¶ 69.) The R4 Agreements that Plaintiff signed also state that "[t]here is no guarantee a fund will accomplish its objectives and the investments can lose money." (Guerra Decl. Ex. A at 7.) Plaintiff therefore does not allege that he was guaranteed or promised a higher return than he made. (*See* Compl.) To the contrary, Plaintiff alleges that he has made money—a 4% return on his investment. (*See id.* ¶ 78.)

9

In his opposition, Plaintiff argues that he can "establish an injury-in-fact by showing that he was deprived of the opportunity to grow his retirement savings by investing in other funds." (Opp. at 10.) While this may be accurate, Plaintiff does not include this allegation in his Complaint. *See In re Daimlerchrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626–27 (D. Del. 2003) (assessing lost opportunity damages); *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Epstein v. JPMorgan Chase & Co.*, No. 13-4744, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (dismissing the plaintiff's complaint for lack of Article III standing and declining to infer standing based on the lost "opportunity to use and/or earn interest" on the uncredited amount where the plaintiff failed to "make this claim in his papers"). Nor does Plaintiff allege that he paid Defendants administrative or other fees in connection with his SIMPLE IRA.[3] (*See generally* Compl.)

Plaintiff may also establish standing by pleading an intangible harm. *See TransUnion*, 594 U.S. at 425 ("Various intangible harms can also be concrete."). But Plaintiff has not done so. Here, Plaintiff alleges that he and the Class Members were "not able to make an adequate, meaningful, and fully knowledgeable decision as to their investments in the SIMPLE IRA plans" due to Defendants' misrepresentations, and "[h]ad Plaintiff and the Class Members known of the material misrepresentations, omissions, and/or concealments, Plaintiff and the Class Members would not have purchased the SIMPLE IRA plan." (Compl. ¶¶ 87-88; *see also id.* ¶ 89.)

---

[3] Plaintiff alleges that "Defendants received a substantial benefit from the sale of the SIMPLE IRAs including a monetary benefit from transaction fees and investment fees" and that "ACI receives additional monetary benefits from these SIMPLE IRAs because ACI receives fees each time its own FOFs purchase or sell ACI's mutual funds," but he does not allege that he personally paid such fees or that such fees were deducted from the returns on his investment. (Compl. ¶¶ 95-96.)

"[T]he Supreme Court has repeatedly recognized . . .that an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing." *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023) (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022)). Plaintiff has not alleged, however, that he was legally entitled to disclosures that Sales Representatives were required to sell a certain number of SIMPLE IRAs or that Sales Representatives received incentives to sell the SIMPLE IRAs. (*See* Compl. ¶¶ 10, 48-50, 54.)

The Court also considers fraudulent misrepresentation as a potential common law analogue for the alleged statutory violations. *See Rohl v. Pro. Fin. Co., Inc.*, No. 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (analyzing standing in Fair Debt Collection Practices Act case by using common law analogue of fraudulent misrepresentation). "But to establish standing, *TransUnion* requires more than a statute's analogue in a common-law action; it requires that "*the harm* [the prospective plaintiff suffered as a result of the statutory violation] bears a sufficiently close relationship to *the harm* from [that common-law action]." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023) (quoting *TransUnion*, 141 S. Ct. at 2209 (emphasis added)). The "harm traditionally recognized as providing a basis for [fraudulent misrepresentation] in American courts is not the mere receipt of a misleading statement, or even confusion, without any further consequence." *Id.* (internal quotation omitted). Instead, "[i]t is the physical, monetary, or cognizable intangible harm, such as a reputational or emotional harm, that may follow from a plaintiff's *reliance* upon the misrepresentation." *Id.* (internal quotations and citations omitted) (emphasis in original). Plaintiff here has not pled such harm.

For the foregoing reasons, Plaintiff has not established Article III standing.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (ECF 52; ECF 54) are **GRANTED**. An appropriate order follows. Plaintiff may file an amended pleading within thirty (30) days of the date of this opinion and accompanying order.

/s/ *Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Leda D. Wettre, U.S.M.J.
       Parties